## CULBERTSON B. PAYNE *vs.* JAMES BULLARD.

It cannot be objected to a bill in equity, filed for the purpose of compelling a stockholder of a bank to pay up the amount of stock subscribed for by him, by a creditor of the bank, who has obtained judgment against it, and had his execution returned *nulla bona,* that a court of equity has no jurisdiction in such a case, and that the remedy is at law, by process of garnishment.

In cases in which equity originally possessed jurisdiction, such jurisdiction is not taken away by a statute conferring jurisdiction on courts of law. At most, the jurisdiction, from that period, becomes concurrent.

The statute of limitations cannot be interposed as a defence to a bill filed against a stockholder of a bank, by a creditor of the bank, to compel him to pay up his stock. At least, the statute cannot commence running until the bank ceases to elect a directory, or to carry on its business.

Stock subscribed to a bank is in the nature of a trust fund for the payment of its liabilities; and, before its payment, the stockholders themselves are chargeable with the trust in favor of the creditors of the bank, and cannot oppose the statute of limitations to their claim to have the stock paid up. It is a continuing, subsisting trust and confidence, to which the statute of limitations has no application.

Payne *v.* Bullard.

A creditor of a bank cannot resort to the stockholders for payment of his claim out of their unpaid stock, until he has obtained a judgment at law against the bank.

Where a party subscribes for a certain number of shares of stock in a bank, and does every thing that is necessary in order to secure his right to the stock, but does not fully pay it up, he cannot afterwards, by any agreement with the bank, diminish the number of his shares, so as to affect the rights of existing creditors of the bank ; and in a contest between such stockholder and a judgment creditor of the bank, the former cannot avoid his obligation to pay up all the stock for which he originally subscribed, by proof that the number of his shares has been reduced by an agreement with the directory, unless he shows, affirmatively, that such reduction took place before the claim of the creditor originated.

An erroneous decree will not be disturbed by the appellate court, unless it be complained of by the aggrieved party.

IN error from the northern district vice-chancery court at Holly Springs; Hon. Henry Dickinson, chancellor.

The facts of the case are sufficiently stated in the opinion of the court.

*Watson & Craft,* for plaintiff in error.

*H. W. Walter,* for defendant in error.

Mr. Justice CLAYTON delivered the opinion of the court.

On the 28th of May, 1838, the appellant became a subscriber, in the Hernando Rail Road and Banking Company, for twenty shares of stock to be paid in money, and for the same number to be paid in lands. By the charter, ten' dollars per share were to be paid on the money subscriptions, at the time of subscribing, and the like amount was to be paid every ninety days, until half the amount subscribed was paid; the remaining half to be subject to the call of the directory.

In September, 1843, the appellee recovered a judgment against the bank for nearly $4000; and upon the return of *nulla bona,* on his execution this bill was filed, to compel the appellant to pay the arrears of his subscription. The court below made a decree in favor of the complainant, and the case thence comes by appeal to this court.

8*

In the spring of 1840, the bank suspended specie payments, and soon became hopelessly insolvent. The last election of directors was in October, 1841, after which time, the whole affair went to wreck, and seems to have been abandoned to its fate.

The defence is, 1. Want of jurisdiction in the court. 2d. The statute of limitations. 3. That defendant was in fact the owner of but two shares of stock payable in money, and that those two had been fully paid.

The objection to the jurisdiction is, that there is an ample remedy at law, afforded by the process of garnishment under a statute of this State. This defence cannot avail. In cases in which equity originally possessed jurisdiction, such jurisdiction is not taken away, by a statute conferring jurisdiction on a court of law. At most the jurisdiction from that period becomes concurrent.

Next as to the statute of limitations. The decisions of this court hold the stock subscribed to a bank, to be in the nature of a trust fund, for the payment of its liabilities. *King* v. *Elliott,* 5 S. & M. 447; *Arthur* v. *Com. and R. R. Bank of Vicksburg,* 9 Ib. 430. This trust fund is usually administered by the directory, as the agent of the stockholders; and after the payment of the stock, the directory is alone looked to for its faithful management. But before its payment, the stockholders themselves are chargeable with the trust, in favor of the creditors of the bank. The stock is the fund which the creditors trust. They have no direct means of compelling its payment, until they have obtained judgments at law. They become the beneficiaries of the trust by receiving the notes, and the stockholders, as the persons bound by the trust, cannot oppose the statute of limitations to their claim to have the stock paid up. If the corporation does not compel payment of the stock, the subscribers must be deemed to hold it for the corporation, subject to its call. It is a continuing, subsisting trust and confidence to which the statute of limitations has no application. Test the principle by the converse state of facts. Suppose the stock to be all paid; the bank to go on prosperously; that no dividends are declared, but the

whole is permitted to accumulate until the charter is about to expire. Then that the stockholders claim their respective amounts of stock with the accrued profits; but the directors refuse to pay, and interpose the statute of limitations, to that part which is of more than six years' standing. No one can believe that the statute would bar in such a state of the case, because of the trust reposed. There is no adverse holding; the stockholders compose the corporation. The same principle must govern this case.

In 1841, this bank ceased to elect a directory, or to carry on its business. From that time perhaps it might be held that there was a cessation of the trust, and that the statute might then begin to run. But on this we give no authoritative opinion, because it is clear, that six years did not elapse from that period, until the filing of this bill.

In regard to the number of shares, with which the appellant is justly chargeable, the case at first sight appears not so clear. Originally he subscribed for twenty shares at $100 each, to be paid in money, and for the same number to be paid in land. The latter are in no wise involved in this controversy, except so far as they may serve to aid in explaining the transaction. Payne conveyed land to the bank worth $2400. At the time of subscribing for the twenty shares to be paid in money, he paid $200 in cash. He was at first listed upon the books of the bank, as the holder of forty shares. At the meeting in 1840, he voted for the officers of the bank, upon twenty-six shares, and again at the meeting in 1841, he voted upon the same number. It is insisted, with plausibility, that this number is made up of twenty-four shares paid in land; and of two shares paid for in full in money. When this change took place does not appear, farther than that it was done prior to October, 1840; the bank suspended before that time, in the spring of 1840.

According to the case of *Hayne* v. *Beauchamp*, 5 S. & M. 515, the subscription for the twenty shares to be paid in money, accompanied by the payment of ten per cent. on the amount so subscribed, made Payne a stockholder for the twenty shares. Afterwards he might reduce the number of

his shares, with the consent of the stockholders, or of the directory, if, in so doing, he should inflict no injury upon the other creditors of the bank. But he cannot be permitted to do so, after debts have been incurred, which there are no means to pay, other than the capital stock subscribed.

In this case it is manifest, that the original subscription was for twenty shares of money stock, and that Payne was at first listed upon the books of the bank as the holder of forty shares. He was then liable to that extent. To discharge himself from that amount, it was incumbent upon him to show affirmatively, that the change was made, when it might lawfully have been done, that is, before the liability of the bank accrued upon the notes or bills of exchange, which were the foundation of the judgment of the complainant. Having failed to do this, he has failed to make out his defence. The complainant has established that the defendant was once liable, and the latter has not shown that he was released from the full extent of his original undertaking, at a time when such release might lawfully have been made by the corporation.

A decree for a larger amount might perhaps have been properly rendered, but as the appellee has not complained of it, in this particular, it will not be disturbed.

The decree is affirmed.