W. C. ELLIS *et al. v.* H. P. GATES MERCANTILE COMPANY *et al.*

[60 South. 649.]

1. BANKS AND BANKING. *Liability of directors. Action by stock-holders and depositors. Receiver. Parties.*

> The board of directors is the governing body of a bank and to the directors is committed the general management of its affairs and they are responsible for loss resulting from the wrogful acts or omissions of other directors or agents, where such loss is a consequence of their own neglect of duty, either in failing to supervise the company's business with proper attention or in neglecting to use proper care in the appointment of such agents.

2. SAME.

> In case of loss caused by the negligence of the directors of a bank suit may be brought against them either by the bank itself, if a going concern, or if in the hands of a receiver, by such receiver, or in case of his failure or refusal by the stock-holders and depositors, and where the receiver fails or refuses to act it is proper to join him as a party defendant, with the directors, to the suit.

APPEAL from the chancery court of Simpson county.
HON. R. E. SHEEHY, Chancellor.

Suit by H. B. Gates Mercantile Company and others, against W. C. Ellis and others. From a decree for complainants, defendants appeal.

The facts are fully stated in the opinion of the court

*Alexander & Alexander* for appellants.

The suit is one on the part of creditors or depositors and shareholders of the Magee Bank against its directors seeking to hold the directors personally liable for the losses alleged to have been sustained by reason of the neglect and general mismanagement on the part of the said directors and officers of the bank.

The demurrer to the said bill alleges, among other things, the following grounds:

"The right of action, if any there is, is in the bank, or its receiver, and not in complainants. Mere negligence unaccompanied by actual fraudulent conduct is not ground for action by creditors against the directors of a bank. The bill affirmatively shows that the claim against the directors, if it existed, was an asset of the bank and passed to the purchasers of the assets at public sale."

Defendants specially demurred to so much of the bill as is filed by creditors on the following grounds:

"1. No ground of action in favor of the creditors of the bank is shown.

"2. No deceit is alleged, and if it were the action would have to be at law and by each individual creditor on his own account.

"3. A creditor's bill can lie only where all creditors have a common ground of action, and that is not shown in this case."

Deeming further comment on the nature of this case unnecessary, we will proceed immediately to the discussion of the law of the case.

*Hart* v. *Evanson,* 105 N. W. 942, 4 L. R. A. (N. S.) 438. This case was an action brought to hold a party liable as a director of a bank for losses which plaintiff sustained as surety upon a bond due to the negligence and mismanagement of the director. The court says (reversing the judgment of the lower court):

"The fallacy which underlies each of the several theories upon which respondent seeks to sustain his right to recover in this action, is the assumption that the directors of a banking corporation owe some duty individually to each creditor of the corporation. That assumption is erroneous. The creditor deals with the corporation and contracts with it, not with the individual directors. The directors are agents or representatives of the entire body of stockholders, and the relationship between the corporation and the directors is that of principal and agent. The agency of course implies a trust, but the obligation imposed by the trust are solely to the corporation whose agents and trustees they are, and, like all other agents, they are accountable for their stewardship to their principal alone. Creditors of the corporation are utter strangers to the obligations of the directors to the corporation. *Howe* v. *Barney,* 45 Fed. 668; *Bank* v. *Peters,* 44 Fed. 13; *Bailey* v. *Mosher,* 63 Fed. 488; *Briggs* v. *Spaulding,* 141 U. S. 132, 35 L. Ed. 662; *Fusz* v. *Spaulhorst,* 67 Mo. 256; *Union National Bank* v. *Hill,* 148 Mo. 380; *Deaderick* v. *Bank,* 100 Tenn. 457; *Zinn* v. *Mendel,* 9 W. Va. 580; *Andrews* v. *Foster,* 76 Iowa, 535, 41 N. W. 212. The fact that plaintiff has suffered loss as a result of the defendant's action or omission to act does not necessarily give the plaintiff a cause of action against the defendants to recover damages.

"It follows from these propositions, which we deem to be axiomatic, that the plaintiff has not shown any cause of action against this appellant, for the reason that the appellant has not violated any obligation due him to respondent. The complaint does not allege, nor

does the evidence show any affirmative, willful misrepresentation of fact by this appellant with intent to deceive. The allegations and proof merely show gross neglect by the defendant of his duties as a director. . . . It it apparent, then, that the finding as to misrepresentation was merely a finding that the defendant passively suffered the bank to continue in business when he knew it was insolvent.''

In this bill before the court there are no allegations sufficient to establish an action for deceit, or what is most generally termed ''actionable deceit.'' In fact, the bill alleges nothing more than mere neglect or mismanagement on the part of the directors. In fact, it would be difficult to construe any of the allegations in the bill so as to include fraud in any of its allegations.

In the case of *Hart* v. *Evanson, supra,* the court further said:

''Two of the essential elements of actionable deceit are a willful misrepresentation, and an intent thereby to induce another person to alter his position. Whatever may have been the appellant's duty as a director under such circumstances, it was a duty which, in a legal sense, he owed only to the corporation. For his acts or omissions as a director he is answerable only as an agent or trustee to his principal, not to third persons.''

In presenting the case before the chancellor on demurrer, the counsel for appellee contends that, since the bill alleged that after the bank became insolvent the directors kept the bank open, sold its stock and received deposits; that this was an allegation that the stock was fraudulently sold and deposits fraudulently received. In other words, that a mere allegation that the directors knowingly received deposits and sold stock when the bank was insolvent was a sufficient allegation of fraud or actionable deceit, thus endeavoring to include in an allegation of gross neglect an inference of willful fraud and intentional injury.

The court said further in *Hart* v. *Evans, supra*:

"It is urged that the appellant's conduct as a director was so grossly negligent that the law will infer willful fraud and intentional injury. That argument involves an absurdity. Negligence, whether slight, ordinary, or gross, consists of the want of care, and implies the absence of intentional wrongdoing. *Morrison* v. *Lee*, 102 N. W. 223. There are several cases in which a creditor has been permitted to recover damages from directors under circumstances similar to those in the case at bar (citing numerous cases). These cases proceed upon the theory that the directors are trustees for creditors, and individually owe a legal duty to them. For reasons hereinbefore stated, we think that theory is untenable."

We refer the court to the *Hart case, supra*, 3 L. R. A. 438. *Stone* v. *Rorrman*, 183 Mo. 552, 82 S. W. 76; *Fusz* v. *Spaunhorst*, 67 Mo. 256; *Utley* v. *Hill*, 55 S. W. 1098, 49 L. R. A. 323

In view of these plain expressions of the court upon the proposition of liability for negligence in the management of the business of the bank, we deem it unnecessary to burden this brief with a review of all the authorities on this subject. It is sufficient to say that this conclusion is supported by overwhelming weight of authority. In addition to the cases referred to at length herein note the following:

*Hunn* v. *Cary*, 82 N. Y. 65, 37 Am. Rep. 546; *Marshall* v. *Savings Bank*, 85 Va. 1. c. 684; Morse on Banks & Banking (4 Ed.), sec. 128; *Brinckerhoff v. Bostwick*, 88 N. Y. 52; *Bank* v. *Hill*, 148 Mo. 389; Cock on Stock & Stockholders, 52 Ed., sec. 703; *Bank* v. *Bousseux*, 3 Fed. 817; *Williams* v. *McKay*, 40 N. J. Eq. 189.

As alleged in the bill the assets of the bank were sold by the receiver and under the ruling we have just given, these assets passed to the assignees or purchasers, and they alone are entitled to sue. Note the fourth ground of demurrer.

As we have alleged there is quite a distinction between an action for negligence only and an action for deceit. In order for an action of deceit to lie there must be knowledge on the part of the directors. There can be no deceit unless knowledge is averred and proven. Mere statement of negligence and refusal to inform themselves is not sufficient to cover actionable deceit, and when there is an absence of knowledge there can be no deceit. Whether the negligence is slight or gross consists of want of care and implies the absence of intentional wrongdoing or knowledge. In other words *scienter* is necessary in an action for deceit. 10 Cyc. 843.

We further refer the court to Morse on Banks & Banking (4 Ed.), section 129, page 284.

"If the liability of a director accrues for hishonesty, negligence or incompetency, the claim of the bank against him becomes a part of the assets of the institution, and assignee, receiver, commissioner or other party whomsoever, who may come into the possession of the property is obliged to regard the rights of action against such delinquent directors as a part of the available assets. Neither the stockholders or creditor can sue directors of an insolvent bank to make them personally liable for mismanagement. The receiver, assignee, etc., alone can maintain the action," citing *Howe* v. *Barney,* 45 Fed. 668; *Bank* v. *Peters,* 44 Fed. 13; *Bailey* v. *Mosher,* 63 Fed. 488.

Since counsel for appellee lay great stress upon *Blumer* v. *Ulmer,* from Jackson county, recently decided by this court, contending that this case determines, we have procured and examined the supreme court record in *Blumer* v. *Ulmer* from Jackson county, the case which it has been contended might sustain the contention that the bill in the case of *Gates Mercantile Company* v. *The Directors of the Magee Bank* was good against the demurrer as a bill by creditors to recover damages for deceit.

There are several averments in the bill to the effect that if the directors did not actually know of the insol-

vency they ought to have known of it, but these do not qualify except in two or three places the positive averments of the bill contained in the many paragraphs that the action of the directors was not only negligent but fraudulent. Of course, if its acts of omission were fraudulent they would be the basis of deceit.

You will see it is plainly argued that this bill was different from the bill by the receiver in behalf of the corporation, because it charged that the action of the directors sued "was a part of a fraudulent plan." On page 7 of the brief, the averment is plain, "These complainants have their independent right of action against the persons who have deceived them and defrauded them."

The case of *Wolf* v. *Simmons*, 75 Miss. 539, quoted in this brief, page 8, is as follows: "Bank directors who know of the insolvency of the corporation, and yet hold it out to the world as worthy of credit, etc.," are liable to all persons injured by their misconduct.

So we submit that *Blumer* v. *Ulmer* cannot be distorted into an authority for the proposition that an action of deceit will lie where there has not been knowledge charged. It is an anomaly to speak of deceit apart from a *scienter*. Deceit is but another name for fraud. Indeed, the title, "Deceit," in Cyclopedia of Law merely refers us to fraud, and there cannot be an action of deceit unless fraud is the basis of it. The paragraph in Cyc. to which we gave a reference under the general Title, "Corporations," plainly shows that the basis of deceit is *scienter*. To charge directors for an omission of duty is merely the basis for an action of negligence, and for such an action the corporation alone can recover.

Since it is clear that this claim against the directors, if it has an asset due to the corporation and distributable to all of its creditors ratably, was sold by being included in all of the assets sold, this bill cannot be maintained unless it be one for deceit, and that is what Judge

MAYES, Special Judge, held in the Ulmer case. He used the word deceit knowingly, and it is not supposed that so learned a lawyer does not know that deceit is based on knowledge. If knowledge be lacking, then it is mere negligence.

We therefore respectfully submit that the case at bar made out by complainants' bill can be nothing more than an action for negligence, and that the right to sue, if any there be, passed to the receiver and to the purchasers at the sale of the assets and the mere negligence without fraud is not ground for action by creditors of a bank, and if the bill could be so construed as to sustain an action for deceit, such an action should be brought by each individual creditor on his own account.

We respectfully submit that the judgment should be reversed and the demurrer to the bill sustained.

*Flowers, Alexander & Whitfield,* for appellee.

The bill filed in this case is practically the same as that in the case of *Blumer* v. *Ulmer et al.* We were interested in that case also and in the trial court. We know of no material difference. That case is reported in 44 So. 161. In both cases depositors sue for their losses occasioned by the defaults of the officers of the defunct institution and charge that they were induced to put their money in the bank by the acts of the managers in keeping the bank open for business and holding it out to the public as solvent and safe. In the Blumer case it was not pretended that the managers went to the complainants and expressly assured them that the bank was safe to do business with. They kept it open for business, however, and invited the public to put in their money when at the same time they were engaged in appropriating it or permitting it to be squandered by others. Such is the case at bar.

Men of capacity and integrity are not put at the head of an institution of this character simply to act as decoys

to lure the innocent and unsuspecting to destruction.
One puts his money into a bank because he considers the
men in control to be honest and capable. The men who
take such positions take them with the understanding
that the patrons of the bank will get the benefit of the
honesty and capacity which they possess.

Directors and Officers of a banking institution, wheth-
er a savings bank or ordinary bank of deposit, in the
management of the bank's affairs, occupy a fiduciary re-
lation to stockholders, depositors and general creditors,
and in courts of equity they must answer as trustees to
*cestuis que trustent.*

We will offer what support we have at hand for this
statement of the general doctrine.

And when the relation of the managing officers of a
banking institution to its patrons and stockholders is
described with fair accuracy by the definition of a trust:

"A trust, in the most enlarged sense, in which the term
is used in English jurisprudence, may be defined to be
an equitable right, title or interest in property, real or
personal, distinct from the legal ownership thereof. In
other words, the legal owner holds the direct and abso-
lute dominion over the property in view of the law; but
the income, profits, or benefits thereof in his hands, be-
long wholly, or in part, to others. The legal estate in
the property is thus made subservient to certain uses,
benefits or charges in favor of others; and these uses,
benefits or charges constitute trusts, which courts of
equity will compel the legal owner or trustee to perform
in favor of the *cestui que trust* or beneficiary." Story
Eq. Jur. (— Ed.), sec. 964.

"A trust may be defined as an obligation arising out
of a confidence reposed in one who has the legal title to
property conveyed to him, that he will faithfully apply
and deal with such property according to the confidence
reposed. A trustee, therefore, is one who holds property
in trust." 28 Am. & Eng. Ency. of Law (2 Ed.),, p. 858.

In Cook on Corporations (5 Ed. 1903), sec. 648, the author says:

"It is frequently said, both in the cases and in the textbooks, that the directors of a corporation are practically trustees, with the whole body of the stockholders as *cestuis que trustent.* . . . And again, that while courts of law generally treat the directors as agents, courts of equity treat them as trustees and hold them to a strict account for any breach of the trust relation. For all practical purposes they are trustees when called upon in equity to account for their official conduct." The case quoted from is *Bosworth* v. *Allen,* 168 N. Y. (1901) 120 Fed. 440, 94 N. W. 171.

*Williams, Receiver,* v. *McKay et al.* (1885), 40 N. J. Eq. 189, 53 Am. Rep. 775, was a suit in equity by the receiver of the Mechanics' and Laborers' Savings Bank against its managers for the purpose of holding them liable for certain losses sustained from time to time through a series of years. The right to the relief was based on the negligence of these officers in the management of the bank's affairs.

We are able to cite any number of adjudications to the effect that the bank directors are accountable as trustees for their official misconduct. Nearly all the authorities, however, which we rely upon to support other propositions in this case take for granted this first important rule. To prove the correctness of our general proposition we will therefore only add the support of our own decisions.

*Wolfe* v. *Simmons,* 75 Miss. 539; *Williams* v. *Chapman, Receiver, et al.,* 76 Miss. 942:

This bill is maintainable even upon the theory attacked by appellants as the true theory of the proceedings, that is, that these people have their respective individual actions for deceit. The only real argument of appellants is that the directors are not shown to have had positive knowledge. It is denied by appellants that it is sufficient

to charge that they should have known the facts and held
the bank out to an unsuspecting and trusting public as
being worthy of confidence. Certainly the bill is suffi-
cient, viewed in this light.

But we contend much more. We insist that it is main-
tainable even as a suit which the receiver might have
brought and refused to bring. We insist that under the
authorities these appellees could sue even if the receiver
had not refused to sue. But the bill charges that the re-
ceiver had been requested to bring the suit and had de-
clined to do so.

5 Cyc. 483; 21 Am. & Eng. Ency. of Law (2d Ed.), 874,
*et seq*; 15 Ency. of Pl. & Pr. 69; 15 Ency. of Pl. & Pr.
878; *Wallace* v. *Lincoln Savings Bank,* 24 Am. St. Rep.
652; *Schley* v. *Dixon,* 24 Ga. 273, 71 Am. Dec. 121.

Another point pressed by counsel for appellants is that
the right to sue is an asset of the bank and that this
passed to the purchasers at the receiver's sale. But such
a right to sue is not such an asset as was sold. There is
nothing in the order directing the sale that shows that
the term "assets" was intended to include this right of
action. That the term "assets" does not ordinarily em-
brace such a right of action as settled by the authorities.
Thus it is said in *Leopold Lacambe* v. *Richard Miliken,*
36 La. Ann. 367:

"The liability for the debts and obligations of the con-
cern imposed on the directors as a penalty for such viola-
tion is not an asset susceptible of collection by the com-
missioners. It is a claim which accrues to the creditors
*ut singuli* and which cannot be enforced by the liquida-
tors.

*Bristol* v. *Blatchford,* 12 Blatchf. 341; *Dutcher* v. *Bank,*
12 Blatchf. 435; *Piscataqua Co.* v. *Hill,* 60 Me. 178; *An-
derson* v. *Spurs,* 21 Hun, 570; *Bank of Niagara* v. *John-
son,* 8 Wend. 645; *Earnsworth* v. *Wood,* 91 N. Y. 308;
Thompson on Directors, p. 460. A direct authority for
our contention is *Minnesota Mfg. Co.* v. *Langdon,* 44
Minn. 37.

The word "assets" would not ordinarily be taken to embrace mere choses in action which might or might not be figured out or attempted to be enforced. There is nothing shown by this bill to indicate that any such large meaning was given to the word in the instant case. Besides as we have already shown the right of action is one which exists in the right of the creditors and stockholders themselves.

Reĕd, J., delivered the opinion of the court.   ·

This is a suit in equity, brought by a number of the depositors, together with several of the stockholders, in the Magee Bank against the directors of that bank and the receiver thereof, asking from the receiver information showing the amount lost to the bank by reason of defalcations of the cashier, and as to the loans made by the bank, and for the production of the books of the bank in court so that they may be inspected, and seeking a decree against the directors requiring them to pay to appellees, and all other stockholders and depositors, all sums which may be due them by the bank and for which the directors are liable, by reason of their neglect and mismanagement of the affairs of the bank, as averred in the bill.

It is shown in the bill that by-laws, duly adopted by the stockholders of the bank, provided for a board of directors, who were charged with the exercise of general supervision of the affairs of the bank and the superintending of the making of loans, and the conduct of the officers in immediate control of the financial operations of the bank. The by-laws also provided that the directors should have regular monthly meetings, should, through a committee of their number, examine the condition of the bank, count the cash, compare its assets and liabilities with the ledger, and, in short, to direct the finances and general business of the bank. The. bill charges the directors failed and refused to hold regular monthly meet-

ings, and failed to appoint a finance committee, as provided, and to keep full and accurate reports of the meetings. It is charged that it was the duty of the directors to give their personal attention to the management of the affairs of the bank, to guard it generally against fraud, misappropriation of assets, and defalcation on the part of its cashier and other officers, to require the cashier to execute a fidelity bond, to make frequent investigations of the bank, and to give notice to the public if they should find the bank insolvent, and, in such case, to refuse to receive further deposits or permit the bank to continue in business.

The bill charges that the directors diregarded their duties as shown above, and failed to make proper supervision, investigation, and report; that they employed a cashier who was wholly inefficient and incompetent to discharge the duties of his office, and was a reckless speculator, dishonest, and dissipated, all of which they knew, or could have known by the exercise of the slightest diligence; that by his misappropriations, and his making improvident and unlawful loans, and by his general recklessness and unbusinesslike conduct, large sums of money were lost to the bank, resulting in the insolvency thereof and being placed in the hands of a receiver appointed by the chancery court to wind up its affairs. It is also charged that by reason of the directors' failure in making proper examinations of books and the business of the bank, and to notify the guaranty company of the defalcations of the cashier, the receiver was unable, in a suit brought by him, to collect anything on the penalty of his bond. The bill also contains the following charge: "Complainants further show that the said deposits were made by complainants after the said bank was really insolvent, and were received by the bank after said officers and directors knew that the said bank was insolvent, or by the exercise of proper care, attention, and diligence should have known of its insolvency."

It is shown in the bill that the receiver had been requested by appellees to bring suit against the directors for the amounts lost through their inattention and neglect, and that he has failed and refused to do so; also that they are entitled to a discovery from the receiver, who is now the lawful custodian of the books, of information as to the real status of the bank, and to know its condition and the amounts lost. A demurrer was filed to the bill and overruled, and an appeal taken to this court.

It will be noted that this is a general bill filed by some of the depositors and stockholders on behalf of all depositors and stockholders of the bank for the purpose of charging the directors, as managing officers of the bank, in a court of equity, with sums lost through their negligence and mismanagement of the affairs of the bank, to the end that all stockholders and depositors may be paid the amounts found to be due them. The suit might have been brought by the bank, to which the directors, as officers or trustees, were first liable. The bank, not being a going concern, and its business being under the control and management of the receiver appointed by a court of equity for the purpose of collecting the assets and winding up its affairs, could not bring the suit; but it would be proper for the receiver, standing in the place of the bank and administering its affairs, to bring the suit. It is shown by the bill that, if the receiver refused and failed to bring the suit, then it was entirely proper for the suit to be brought by the depositors and stockholders for the purposes stated. It was also proper, not only to join all of the directors, but under the facts, as shown in the bill, to include the receiver as a party defendant.

The chief contention by appellants is that directors are not liable for losses sustained on account of their negligence in managing the affairs of the bank. The board of directors is the governing body of a bank. As such managing body, they exercise, conduct, and control

all corporate powers. To the directors is committed the general management of the affairs of the bank.

In discussing the liability of directors, as measured by their relation as trustees, Mr. Thompson in his commentaries on the Law of Private Corporations, section 1268, p. 270, says: "By accepting the position, they assume a capacity to manage the business of the corporation, and impliedly undertake to use as much diligence and care as the proper performance of the duties of their office requires, and to give the enterprise the benefit of their best care and judgment. They are bound to manage the affairs of the company with the same degree of care and prudence which is generally exercised by business men in the management of their own affairs, and the fact of the service without compensation does not permit a less degree of activity. They must be diligent and careful in performing the duties they have undertaken, and imprudence and negligence cannot be excused on the ground of ignorance or inexperience or the honesty of intention. . . . They are not permitted to evade or delegate their powers and important duties, and their supervision must be such as would enable them at all times to know the general financial condition of the corporation and to check or prevent any imprudent or dishonest conduct in officials. . . . They are bound to know the character and habits of the officers whom they employ, and they cannot be heard to say that they were ignorant of facts, the existence of which are shown by the books and papers of the corporation, and which would be known to them but for their neglect or inattention to the business; and they are resposible for loss resulting from the wrongful acts or omissions of other directors or agents, where such loss was a consequence of their own neglect of duty, either in failing to supervise the company's business with proper attention or in neglecting to use proper care in the appointment of such agents."

And under the subject of liability for negligent ignorance, section 1276, Mr. Thompson says: "The fact that

directors of a corporation do and must commit the details of its business to executive and inferior offcers does not absolve them from the duty of maintaining a reasonable supervision, and, if such officers waste the assets of the corporation, the directors, ordinarily, cannot escape liability on the ground that they did not know of the wrongdoing, where it is made to appear that their ignorance was the result of a want of that care which ordinarily prudent and diligent men would exercise under similar circumstances. . . . Directors are charged with knowledge, when, by the exercise of ordinary care, they might have known, as it was their duty to know, that loans were made in excess of the statutory limit. . . . With reference to banks, at least, it has been said that directors are conclusively presumed to know the condition of the bank, and that, if this were not true, they would be privileged to be negligent; and, the more ignorant they could manage to be about its condition, the more secure they would be from liability."

It is stated in Bolles' Law of Banking, p. 185, that: "That tendency is to hold directors liable when they would have known the condition of their bank, had they attended to their duty."

In the case of *Delano* v. *Case*, 121 Ill. 247, 12 N. E. 676, 2 Am. St. Rep. 81, the court held that: "The directors of a bank are trustees for depositors as well as for stockholders, and they are bound to the observance of ordinary care and diligence, and are hence liable for injuries resulting from their nonobservance."

In the case of *Wolfe* v. *Simmons*, 75 Miss. 539, 23 South. 586, Terral, J., speaking for the court, said: "At common law, every person undertaking to act for others is presumed as undertaking to act with integrity, diligence, and skill, and an action on the case for damages lay for a breach of such duties. 3 Bl. Com. 165. Directors of banks are to be understood as contracting for reasonable capacity, skill, and care in the discharge of their duties

(Morse on Banks and Banking, section 125), and are consequently liable for the want of such capacity, skill, and care to all persons who have been damaged thereby."

In *Union National Bank* v. *Hill*, 148 Mo. 380, 49 S. W. 1012, 71 Am. St. Rep. 615, it was held: "The board of directors of a bank are bound to know all that is done by it, as well as the system and rules arranged for its doing; and, what they ought to know as to the general course of the bank's business, they will be presumed to have known, in a contest between the bank and third persons dealing in good faith with it. The directors must use ordinary care and diligence to know the conduct of their subordinate officers, as well as what the bank books show, and to carefully observe the law under which the bank is organized. And the directors are answerable for loses sustained by the bank through the acts of its cashier in lending money, not only in excess of the limit prescribed by statute, but to insolvent persons, where they, by the exercise of ordinary care, might have known, and were therefore in duty bound to know, that this was being done; and it is no excuse, for such neglect, that they received no benefit from such loans, and that their services were gratutious."

In delivering the opinion in the case of *Wallace* v. *Lincoln Savings Bank*, 89 Tenn. 630, 15 S. W. 448, 24 Am. St. Rep. 625, LURTON, J., said: "Directors, by assuming office, agree to give as much of their time and attention to the duties assumed as the proper care of the interests intrusted to them may require. If they are inattentive to these duties, if they neglect to attend meetings of the board, if they turn over the management of the business of the company to the exclusive control of other agents, thus abdicating their control, then they are guilty of gross negligence with respect to their ministerial duties; and if loss results to the corporation by breaches of trust or acts of negligence committed by those left in control, which by due care and attention on their part

could have been avoided, they will be responsible to the corporation.''

The bill in this case sufficiently charges that the directors failed to use proper care and diligence in the management of the affairs of the bank, and that they neglected to perform the duties imposed upon them by the by-laws; that they ought to have known, and by the use of ordinary care, such as it was their duty to exercise, could have known, the condition of the bank, the defalcations, and improvident and reckless conduct by the cashier whom they employed, and finally its insolvency; that their neglect to carry out the plain requirements of the by-laws resulted in the failure of the bank, and loss to the depositors and stockholders. The directors were elected by the stockholders and were surely directly responsible to them for the proper management of the bank. The relation of the depositors to the bank, growing out of their placing their money with that institution for safe-keeping, and to be at their convenience drawn out for their use, is such that the directors, as the officers charged with the management of the bank, are required to be diligent and careful in conducting the bank's business, and are liable to the depositors for losses sustained by the bank from negligence in performing the duties of their office. It is the duty of a director to know the condition of his bank and to see that its affairs are honestly and properly managed. He cannot shirk this duty and avoid liability. The chancellor did not err in overruling the demurrer.

*Affirmed.*