## VENTRESS ET AL. *v.* WALLACE.

[71 South. 636.]

1. EQUITY. *Amended pleading. Operation. Banks and banking. Director's liability. Actions. Descent and distribution. Action against heirs. Limitations. Negligence.*

Where an amended and supplemental bill, is asked by the pleader "to be taken as and for an amended and supplemental bill of complaint, and as part of his original bill herein," and that relief be granted "upon the final hearing of this bill of complaint along with complainant's original bill herein," the amended bill in such case was not an abandonment of any of the averments of the original bill, but as indicated by the language of the amended bill itself as supplemental thereto, and both documents together constitute the bill of complaint in the case.

2. BANKS AND BANKING. *Director's liability. Actions.*

A receiver of an insolvent bank is the party primarily privileged and charged with the duty of suing the directors of the bank for their gross negligence in causing the insolvency of the bank, and his right to sue will not be limited or measured by the caption of his bill describing him as "suing herein by order of the court, for the benefit of all creditors of said bank." The question is not what the complainant calls himself but what action he in truth and in fact states.

3. BANKS AND BANKING. *Director's liability. Action in equity.*

A suit in equity can be brought by a receiver of an insolvent
bank against the directors whose negligence caused the insol-
vency, to avoid a multiplicity of suits and because an account-
ing will probably be necessary and because of the fiduciary rela-
tions of the parties.

4. DESCENT AND DISTRIBUTION. *Actions against heirs.*

A suit by the receiver of an insolvent bank cannot be maintained
against the heirs of a deceased director for the latter's gross
negligence as director, his remedy if any, being to have an ad-
ministrator of the director's estate, appointed.

ON SUGGESTION OF ERROR.

BANKS AND BANKING. *Actions against bank directors. Limitations.
Negligence.*

In a suit by the receiver of an insolvent bank against all the di-
rectors of the bank for gross negligence during a number of
years resulting in the bank's insolvency, the statute of limita-
tions does not begin to run in favor of the directors until they
surrender their office as directors.

APPEAL from the chancery court of Wilkinson county.
HON. R. W. CUTRER, Chancellor.

Suit by D. H. Wallace, receiver, against L. T. Ven-
tress and others. From a decree overruling their de-
murrer, defendants appeal.

The facts are fully stated in the opinion of the court.

*Bramlette & Bramlette, A. H. Jones* and *Green &
Green,* for appellant.

*J. McC. Martin* and *Watkins & Watkins,* for appellee.

STEVENS, J., delivered the opinion of the court.

Appellants appeal from a decree overruling their
separate demurrers to the amended and supplemental
bill of complaint exhibited against them by D. H. Wal-
lace, duly qualified receiver of the Citizens' Bank of
Wilkinson county. There was an original bill, to which
was interposed a demurrer. Thereafter the amended

and supplemental bill was filed, and separate demurrers were exhibited thereto, considered by the court, and overruled. The original bill avers in detail the appointment of receiver, the insolvency of the bank, and the administration of the bank's assets under the supervision of the court. The bill further charges that the directors and officers of the bank were guilty of willful, wanton, and gross negligence in the management and supervision of the affairs and business of the bank; that they employed a cashier, and intrusted to him the work and responsibility, not only of cashier, but of bookkeeper, correspondent, and general manager of the bank, with full control and possession of the funds, securities, and property of the bank; that the cashier kept all the accounts, handled all moneys, and from time to time juggled the accounts, misused and appropriated the funds of the bank, and became a pronounced defaulter; that after the discovery by mere accident that the cashier had misused and mismanaged the assets of the institution, a liquidator was selected, and an audit company was employed to examine into the affairs and true condition of the bank, and that this company made its report to the directors, submitting, among other things, the following:

"While pointing out, however, that had any examination of the books ever been made previous to the date of January, 1913, the defalcations and irregularities would most certainly have been disclosed, and probably would not have amounted to such a large figure as is now the case."

The bill further charges that during all of the nine years in which the cashier served, no examination or audit of the books and affairs was ever had or made by any one whatever; that the directors accepted the cashier's reports and statements in reference to what the books showed, or as to the condition of the bank; that the charter and by-laws of the bank required an examination or inspection from month to month, but

none was ever made or ordered by the directors; that they failed to appoint a finance or other committee to audit or examine the affairs of the bank, and accordingly no examination or audit was ever made; that the directors failed to use ordinary care in the management, failed to keep informed, and violated every duty imposed upon them by and as an incident to their office of director; that the law required the board to hold regular meetings and keep an accurate and complete record of all proceedings had at their said meetings, to make personal inspection of the bank's affairs and books in January, April, July, and October of every year, and to certify their finding to the auditor of public accounts under oath, and that none of these duties required by law was performed or regarded, but that all statements of the condition of the institution were prepared by the said faithless cashier and accepted by the directors as true and correct without verification. The bill sets out in further detail the obligations and duties of the directors and the alleged gross violation of these duties; the appropriation of the funds and securities of the bank by the cashier, false entries entered by the cashier on the books, the taking from the bank of valuable notes, which the cashier had not accounted for, and the appropriation thereof by the cashier. It is charged that A. G. Shannon, J. H. Jones, and W. P. S. Ventress were directors of the bank, along with the other living directors who are named as defendants to the bill, but that Mr. Ventress departed this life November 23, 1911, Mr. Jones, December 10, 1911, and Mr. Shannon, December 31, 1912. The executrix of Mr. Jones and the administrator of Mr. Shannon and the heirs at law of Mr. Ventress are named as defendants to the bill, no administration having been taken out on the estate of W. P. S. Ventress, deceased. Claim was made against the estates of the said decedents, along with the living directors, for losses of the bank occurring during their lives and while they were mem-

bers of the board of directors, and against the surviving directors alone for losses occurring after the death of the directors mentioned and up to the final suspension of the bank.

The bill attempts to hold the heirs at law of Mr. Ventress liable for all losses of the bank occurring while he was a director to the extent of the value of the real and personal property left by Mr. Ventress and received by his said heirs. The bill prays for an accounting and full adjustment and prorating of the obligations of the several defendants and their estates. The amended and supplemental bill reiterates many of the averments of the original bill, and further sets out in detail the assets and liabilities of the bank and full list of the creditors. The amended bill charges that a bond in the sum of ten thousand dollars was given by the cashier as security for the faithful performance of his duty; that under the provisions of this bond it could be renewed and continued in force from year to year; that this bond had been lost or misplaced, and could not be found among the papers and securities of the bank; that the directors did not examine or pay any attention to the bond, and failed to see that the same was properly renewed and kept in force. It is charged, further, that the cashier was a defaulter from year to year from the time of his appointment, April, 1904 to 1913, and the annual shortage is tabulated, aggregating the total sum of seventy-three thousand three hundred and two dollars and five cents. The amended and supplemental bill abounds in charges of bad faith and bad management on the part of the cashier and the grossest kind of negligence on the part of the directors. The prayer is for an accounting, for personal decree against the living directors, and the personal representatives of the two deceased directors whose estates are being administered upon, and a charge against the property received by the heirs at law of Mr. Ventress from his estate. The demurrers, both general and special, submit every

conceivable objection to the bill. Without setting out in detail the twenty grounds of the general demurrer and the many grounds of the special demurrer to many paragraphs of the bill, we discuss the main points of the case stressed by counsel for appellant in oral argument.

It is contended that after the filing of the amended and supplemental bill the original bill is no part of the pleadings in this cause. The amended and supplemental bill however, is asked by the pleader "to be taken as and for an amended and supplemental bill of complaint, and as part of his original bill herein," and that relief be granted "upon the final hearing of this bill of complaint, along with complainant's original bill herein." Under the facts of this case, therefore, we do not take the amended bill as an abandonment of any of the averments of the original bill, but, as indicated by the language of the amended bill itself, as supplemental thereto. Both documents together constitute the bill of complaint in this case.

The right of the receiver to maintain this suit is earnestly challenged. Counsel for appellants construe and term this an action of the creditors of the bank, attempted to be prosecuted by and through the receiver. This, however, is not a creditors' suit. It is true that the caption of the bill describes the complainant as "suing herein by order of court, for benefit of all creditors of said bank." The bill as a whole shows that this is really and truly a suit in equity by the receiver for and on behalf of the defunct corporation, the affairs of which he is administering under the supervision of the court. In a sense the suit, if successful, will inure to the benefit of creditors. But the right of complainant to sue must not be limited or measured by the expression referred to. The question is not so much what the complainant calls himself as what action he in truth and in fact states. In Morse on Banks and Banking (4th Ed.) section 129, it is stated that:

"If the liability of a director accrues for dishonesty, negligence, or incompetency, the claim of the bank against him becomes a part of the assets of the institution. An assignee, receiver, commissioner, or other party whomsoever, who may come into possession of the property for the purpose of collecting it and distributing it among the creditors and shareholders, is obliged to regard the rights of action against such delinquent directors as a part of the available assets."

Mr. Thompson, in his excellent work on Corporations, paragraph 1316, says:

"It is now practically everywhere conceded, that the receiver succeeds to the title of the corporation, and whatever rights it may have asserted against its unfaithful directors such receiver may also enforce against them. The jurisdiction of the courts of equity to compel unfaithful directors to account to the corporation for losses sustained by their negligence, fraud, and breaches of trust has long been sustained both in England and in this country. An order of court, appointing a receiver of the bank and authorizing him to take charge of and reduce to his possession all the property, rights, credit, demands, and choses in action of every description, however arising, and belonging to the bank, empowers him to bring and prosecute, in his own name, as such receiver, all actions necessary in the discharge of his duties, was held sufficient to authorize the receiver to maintain an action against the directors for damages for losses occasioned by their negligence in the management of the affairs of the bank."

In the case of *Ellis* v. *Mercantile Company,* 103 Miss. 560, 60 So. 649, 43 L. R. A. (N. S.) 982, Ann. Cas. 1915B, 526, which was a suit in equity, brought by a number of depositors and stockholders against the directors of the Magee Bank, one of the grounds of the demurrer to the bill submitted was that:

"The right of action, if any there is, is in the bank, or its receiver, and not in complainants"

—and the court, in its opinion through Reed, J., observes that:

"The suit might have been brought by the bank, to which the directors, as officers or trustees, were first liable. The bank, not being a going concern, and its business being under the control and management of the receiver appointed by a court of equity for the purpose of collecting the assets and winding up its affairs, could not bring the suit; but it would be proper for the receiver, standing in the place of the bank and administering its affairs, to bring the suit."

It was shown in the Ellis Case that the receiver declined to bring the suit in question. The instant case is similar to the case of Ellis v. Mercantile Company, and the liability of the directors under circumstances detailed by the bill now before us is settled and fixed beyond question by the Ellis Case. The right of the receiver to maintain this suit is supported by authority, by reason, and by every sense of justice. The bank, as a going corporation, was managed by its officers and directors, the very parties here sued. Its affairs are now in liquidation, and the receiver is the party primarily privileged and charged with the duty of maintaining this action.

It is earnestly contended that this is an action in tort, and that the equity court is not the proper forum. The *status* of directors has been well defined by text-writers and the adjudications of our own court. Mr. Thompson, paragraph 1215, observes that:

"The rule is thoroughly embodied in the general jurisprudence of both America and England that the *status* of directors is such that they occupy a fiduciary relation toward the corporation and its stockholders, and are treated by courts of equity as trustees. They are regarded as agents intrusted with the management of the corporation, for the benefit of the stockholders collectively, and as occupying a fiduciary relation in the sense that the relation is one of trust, and are held to

the utmost good faith in their dealings with the corporation.''

The case of *Emerson* v. *Gaither, Receiver,* 103 Md. 564, 64 Atl. 26, 8 L. R. A. (N. S.) 738, 7 Ann. Cas. 1114, is interesting and in point. The note to this case collates many authorities, sustaining the jurisdiction of equity over suits by a corporation, or its representative, against the directors for the very kind of losses here complained of. The opinion, in discussing the case of *Cockrill* v. *Cooper,* 86 Fed. 7, 29 C. C. A. 529, says:

''If the receiver is compelled to sue at law, numerous actions must be brought; and very likely several separate actions would have to be brought against some of the directors, to comply strictly with the rules of procedure at law governing the joinder of parties. It is also fair to infer from what is stated in the bill that the excessive loans therein complained of were inaugurated by one set of directors, and either continued, renewed, or enlarged by another, so that a suit brought against any one of the directors would probably involve an inquiry into the proceedings of the board of directors, and into many of the financial transactions of the bank for the entire period during which its affairs are alleged to have been mismanaged.''

The opinion in that case further says:

''Not only can a multiplicity of actions be prevented by a proceeding in equity to redress the wrongs complained of, which is a matter proper to be considered, but it would seem that complete justice to all parties can be thereby better assured than by suits at law. It would be practically impossible for a jury to properly dispose of all questions raised by this bill, and when the fiduciary relations, which the directors occupy to the corporation, is remembered, there would seem to be no reason why courts of equity should not have power to determine such controversies, especially in this state, where the tendency is to extend, rather than limit the jurisdiction of courts of equity.''

In the case of *Bosworth, Receiver,* v. *Allen et al.,* 168 N. Y. 157, 61 N. E. 163, 55 L. R. A. 751, 85 Am. St. Rep. 667, an action by the receiver against directors, the court observes:

"Equitable jurisdiction extends to all culpable acts or omissions of directors by which the pecuniary interests of the corporation are or may be injured."

The holding of our own court in the case of *Brent* v. *Brister Sawmill Co.,* 103 Miss. 876, 60 So. 1018, 43 L. R. A. (N. S.) 720, Ann. Cas. 1915B, 576, and *Ellis et al.* v. *Mercantile Co., supra,* is in perfect accord with this view. Other authorities are collated by counsel for appellees in their exhaustive brief in this case. The rights and liabilities of the parties hereto can best be inquired into and adjusted in equity. The personal representatives of Mr. Jones and Mr. Shannon are sued, and their portion of the liability, if any, must be ascertained with due regard to the beneficiaries of those estates. Losses occurring subsequent to the death of either of these directors could not, of course, be claimed against the estates. The ascertainment of all losses must be determined as of a certain time, and this involves an accounting and the searching out facilities afforded by the chancery court.

The separate demurrer of Mrs. W. G. Ventress, Harriett Ventress, Charles G. Ventress, and Margaret Ventress should have been sustained. The bill shows that no administration has been had upon the estate of W. P. S. Ventress, deceased, and this action should be prosecuted, if at all, against the administrator. Whatever may be the rule in any particular state, and aside from a possible state of facts justifying a suit in equity by a creditor against the heirs at law without administration, the statute laws of our state afford every creditor a full, complete, and adequate remedy at law. The provisions of our Code place any creditor in position to force administration, and in case the realtives do not apply for administration, entitle any interested creditor

to apply for letters of administration, or to petition the court to appoint the county administrator, or the sheriff, in case there is no county administrator. For all this court may know, other creditors of Mr. Ventress might be interested in his estate and the proper administration thereof. Our court, in dealing with a similar question in the case of *Partee* v. *Kortrecht,* 54 Miss. 66, held:

"It cannot be affirmed that the complainants are remediless except in this suit, because the ordinary, regular method of dealing with the assets of a decedent is open to them. When a creditor has the statutory right to take the office of administrator, or to suggest that it be conferred on the county administrator, and neither the one nor the other has been done, it is plain that the ordinary and statutory method of reaching and applying the assets is open to the party."

The right of action in this case is based on the alleged negligence of Mr. Ventress in failing to discharge the duties imposed upon him as a director in his lifetime. It is not only necessary, but proper, that his personal representative should be made a party defendant, to contest with the complainant the essential question of liability. There cannot be said to be any fixed obligation until the merits of this litigation are inquired into by the court, and not only the liability, but the amount thereof, fixed and determined.

It will profit little to discuss the other questions raised by the demurrer. The case has been well briefed and well argued, and has had our careful consideration. We are clearly of the opinion that the bill states a cause of action, that the receiver has the right to sue, and that equity is the proper forum. This presents a case where equity has proper and original jurisdiction. The action of the chancellor in overruling the demurrer of all the parties except the heirs at law of W. P. S. Ventress, deceased, was correct, and to that extent the decree of the court below is affirmed. The decree, in

so far as it overrules the demurrer of the Ventress heirs, should be set aside and reversed. The demurrer as to them should be sustained, and the bill dismissed. The cause will be remanded for further proceedings in accordance with the views herein expressed.

*Affirmed in part and reversed in part.*

### ON SUGGESTION OF ERROR.

The suggestion of error, so-called is really an application for the court to amend its opinion, either by deciding the question of the statute of limitations or by expressly reserving judgment on this ground of the demurrer. Special demurrers were interposed to that part of the bill seeking to recover for losses occurring more than three years prior to the filing of this suit. The bill avers that:

"The following table shows his (the cashier's) stealings, pilferings, and defalcations year by year from October 16, 1904, down to January 18, 1913"

—and undertakes to give, in a general way, the amount of losses for each year. The chancellor granted an appeal to settle the principles of the case, and this appeal brings in review the correctness of his decree overruling these special demurrers. To determine and adjudicate whether either of the statutes of limitations can be availed of by the directors in this case will enable the chancellor confidently to apply the law of the case to the facts, and may save a great deal of expense or costs, as well as labor, in taking proof as to the items which counsel for appellants contend are barred by the statute of limitations. This point was not covered by the oral argument in the case, and for this reason, as also because this feature of the case is presented by special, instead of general, demurrers, our attention was not directed to it in the preparation of the opinion heretofore delivered. The point, however, is covered by the

splendid briefs on file, and we accordingly proceed with this addition to our former opinion.

Counsel for appellant submit that the breach of duty complained of is based upon an implied promise, and that therefore section 3099, Code of 1906, would apply. They contend, further, that if this section does not apply, then that the six-year statute of limitations could certainly be pleaded. While the particular point now before us has occasioned much conflict in the authorities, we are persuaded that the application of certain well-recognized principles of equity will render the problem easy of solution. As stated in the opinion already delivered, the amended bill of complainant in this cause charges the directors with the grossest kind of negligence and continuing sins of omission. The gist of the action is for losses sustained by the bank as a result of many years of mismanagement, the "willful, wanton, and gross negligence in the management of the affairs of said bank." It is laid to the charge of these directors that they willfully failed to investigate the books of the institution or to have the affairs of the bank audited, but on the contrary held the institution out to the trusting public as a safe and solvent banking establishment, and "quietly, negligently, and willfully closed their eyes" to the true condition of the bank and the obligations resting upon them as managing agents of the corporation. This is a case where the entire board of directors is sued. During the period complained of they had exclusive possession and control. It was their business to make and execute all necessary corporate contracts, and to direct the policy of the institution. As a part of their duties, they alone could determine the propriety of any suit at law or equity, and were alone charged with the authority to institute such suits. The demurrer admits, as true, facts which convict the directors, not so much with being guilty of a single act that is wrong or actionable, such as the declaration and payment of an unlawful dividend or the misappropriation

of a certain fund, but of a continuing policy of negligence that is shocking to every sense of justice and that has wrecked the institution. While the directors have had complete and exclusive control, the stockholders left in their charge and trust their several investments, and depositors and creditors have dealt with them in perfect good faith and confidence, and so it is that stockholders, depositors, and creditors generally, in the very nature of things did not know, and could not know, the true condition of the bank at any day during the long period of time complained of, and did not know, and could not know, that any one of the officers and directors was failing to discharge the usual and ordinary duties imposed upon him by his position of director.

It is true, that the stockholders have their annual or periodic meeting for the purpose of electing directors and attending to any other necessary business incident to a regular shareholder's meeting, but at these meetings they looked to the directors, their agents, for a true and correct account of their stewardship and naturally accepted the financial statements submitted by the directors. If, therefore, the directors have continued from month to month and from year to year to neglect the duties imposed by their office and the statutory law of our state and this continuing negligence silently but surely operates over a long period of time and is only brought to the attention of the creditors and shareholders when and not until the institution is hopelessly insolvent and a receiver inquires into the true status of affairs, how can the guilty directors be heard now to say that time has barred this action against them? If any one had notice of the negligence complained of, it is these directors themselves, and they are charged with the responsibility of correcting the evil. If any suit it to be brought against any one or more of the directors, it is this very managing board of directors, who must authorize suit in the name of the corporation and see that same is successfully prosecuted. By their reli-

ance, therefore, upon the statute of limitations they place themselves in the attitude of profiting by their own wrongdoing; and such plea, if sustained by the court, would simply "add insult to injury." They now say to the receiver in this case:

"You cannot maintain this suit because the same should have been filed within three years, and certainly not exceeding six years from the time the losses complained of occurred. It is true that we should have seen to it that this suit was filed, yet the corporation, as a going concern, did not, as a matter of fact, sue us in the time allowed, and we are now discharged from all liability."

It occurs to us that a mere statement of this contention is a sufficient answer. It is a familiar principle of equity that no one should be allowed to profit by his own wrongdoing.

There is another well-recognized principle of law that should apply, and that is the doctrine of concealed fraud. How could the corporation have sued in this case except at the initiative of its directorate? The very board here complained of has either willfully or negligently kept from the beneficiaries of this estate all knowledge of the wrongs complained of, and in the very nature of things this suit could not have been filed any earlier. Under the circumstances it could not be earlier known that losses had in fact occurred. It is only after the receiver is appointed and inquires into its condition and has a correct audit of the bank's affairs made that the corporation as such finds that any losses have occurred and that the interests of the directors are adverse. The conflict in the authorities on the question as to what, if any, statute of limitations is available to directors arises from the varying views as to whether directors are trustees of an express trust. In the determination of the question as applied to the particular case now before us it is really unnecessary for us to determine whether the directors of this bank were trustees of an

express or an implied trust. Our own court in an early case (*Payne* v. *Bullard*, 23 Miss. 88, 55 Am. Dec. 74), very strongly inclined to the holding that directors are trustees, expressly holding that the unpaid subscription of stock "is a continuing, subsisting trust and confidence, to which the statute of limitations has no application." The court uses this further language which, while it may be *dicta*, is yet suggestive and persuasive:

"Test the principle by the converse state of facts. Suppose the stock to be all paid; the bank to go on prosperously; that no dividends are declared, but the whole is permitted to accumulate until the charter is about to expire. Then that the stockholders claim their respective amounts of stock with the accrued profits; but the directors refuse to pay, and interpose the statute of limitations, to that part which is of more than six years' standing. No one can believe that the statute would bar in such a state of the case because of the trust reposed. There is no adverse holding; the stockholders compose the corporation. The same principle must govern this case."

We approve the reasoning in the case of *National Bank of Commerce* v. *Wade* (C. C.), 84 Fed. 15, and the decision of the supreme court of appeals, holding in that case that the statute of limitations did not run so long as the trust was active, and did not begin until the directors surrendered control over the bank. Judge Handford in that case says:

"The statute of limitations of this state provides that the right to commence an action upon a contract or liability, express or implied, which is not in writing, and does not arise out of any written instrument, is barred after three years from the time the cause of action accrued. But it must be remembered that at the time of making the loans which caused the losses complained of the defendants were the managing officers of the bank. I hold that in cases of this nature the statute of limitations will not begin to run so long as the *cestui*

*que trust* is under the control or influence of the trustee (2 Perry, Trusts [3d Ed.] par. 864, p. 512; 2 Pom. Eq. Jur. par. 1089), and, as this suit was commenced within three years from the time when the defendants gave up control of the bank to their successors, it is not barred by the statute of limitations."

We think the ruling that the statute of limitations does not begin to run in favor of a director in a case of this kind until he surrenders his office is the more reasonable and supported by better authority. This view of the question was early outlined by Mr. Justice Sharswood in *Spering's Appeal,* 71 Pa. 11, 10 Am. Rep. 684, a decision, on the whole, favorable to directors. The court in that case said that the view announced by them rendered it unnecessary to discuss the statute of limitations, "except in the case of the defendants Churchman and Smith," and, further:

"Upon the point as made in their case, each of them having entirely ceased to be a director, more than six years before the bill was originally filed, we entirely concur in the opinion of the Chief Justice in Churchman's Case."

The question is fully discussed in the case of *Ellis* v. *Ward,* 137 Ill. 509, 25 N. E. 530, the court emphasizing the proposition that the assets of a corporation are in equity a trust fund, and that the directors of a corporation are trustees. A part of the opinion is in the following language:

"Ordinarily, an express trust is created by a deed or will; but there are many fiduciary relations established by law, and regulated by settled legal rules and principles, where all the elements of an express trust exist and to which the same legal principles are applicable, and such appears to be the relation established by law between directors and the corporation, citing *Hightower* v. *Thornton,* 8 Ga. 486 [52 Am. Dec. 412]; *Payne* v. *Bullard,* 23 Miss. 88 [55 Am. Dec. 74]; *Curry* v. *Woodward,* 53 Ala. 371. The statute of limitations,

therefore, presented no bar to a recovery by the receiver.''

It is interesting to observe that the court cited with approval the early case of *Payne* v. *Bullard, supra,* decided by our own court, and evidently construed the opinion as committing our court to this holding. The two more recent cases of *Greenfield Savings Bank* v. *Abercrombie,* 211 Mass. 252, 97 N. E. 897 [39 L. R. A. (N. S.) 173, Ann. Cas. 1913B, 420], and *Brinckerhoff* v. *Roosevelt,* 143 Fed. 478 [74 C. C. A. 498], held with much confidence that the statute of limitations does not begin to run until after the cessation of the trust imposed upon directors, the circuit court of appeals making the following pertinent observation:

''The action is not barred by the statute of limitations or for laches, for the reason that the complainant did not discover the wrongful conduct, which is the foundation of the action, until a few months prior to its commencement. Directors are assumed to act for the interest of their stockholders, and the latter have a right to rely upon the assumption that they are acting honestly until the contrary appears.''

Mr. Thompson, at paragraph 1318, discusses the defense here pleaded by the directors, and announces the general rule as follows:

'As to the defense of the statute of limitations, the rule applicable, in cases of fraud applies in this class of cases, that is, the statute begins to run only from the time when the corporation or its representative acquired knowledge of the fraud or collusion. Such cases proceed upon the theory that the action does not accrue until the discovery of the facts constituting the fraud by the aggrieved party. . . . A better class of cases, it seems, regard the directors as trustees, and that no lapse of time is a bar to a direct or express trust, as between the trustee and a cestui que trust, and that the statute of limitations does not run against the claim of

a corporation in actions against directors for breaches of trust.''

It is not the purpose of this opinion to declare directors of a corporation trustees of an express trust. The application of the statute must be governed by the facts of any particular case. The case of *Cooper* v. *Hill,* 94 Fed. 582, 36 C. C. A. 402, relied on by counsel for appellants, was controlled by the facts of that particular case, and the court recognized the principle which should control the instant case in the following language:

"If the acts of the appellants upon which this suit is founded had been parts of a continuous and persistent course of action which had wrecked this bank and robbed its creditors and stockholders; if they had been accompanied with intentional misrepresentations; if they had been purposely or negligently concealed from the other officers and employees of the bank or from the stockholders and employees of the bank or from the stockholders and creditors—these facts might well induce a court of equity to permit this suit to be maintained notwithstanding the statute.''

It will be observed that the court in that case says if the facts are ''negligently concealed'' from the stockholders and creditors, the statute should not apply. The same salutary principle is applied in the case of *Rankin* v. *Cooper* (C. C.), 149 Fed. 1010, the court referring to the exceptional circumstances recognized by the opinion in *Cooper* v. *Hill, supra.* We wish to cite with approval this language of the opinion that applies with equal force to the present case:

"As to the statute of limitations, I have come to the conclusion that it does not apply, because the case, in my opinion, falls under the exceptional circumstances referred to by SANBORN, J., in *Cooper* v. *Hill,* 94 Fed. 582 [36 C. C. A. 402], circumstances under which a court of equity will permit a suit to be maintained, notwithstanding the statute, . . . and also because at

the time of the commission of the wrongful acts in question and afterwards until the appointment of a receiver, the defendants who were concerned therein constituted the majority, if not the whole, of the board of directors, and that in consequence of their having full control of the corporation no suit could be brought to redress the real grievances until a receiver was appointed.

One of the strongest opinions relied upon by appellant is that of *Boyd* v. *Mutual Fire Ins. Co.*, 116 Wis. 155, 90 N. W. 1086, 94 N. W. 171, 61 L. R. A. 918, 96 Am. St. Rep. 948. The reasoning of the court in that case is persuasive that directors are not trustees of an ''express trust'' in the sense that we generally understand that term, but the real question involved in that case was whether or not the statute of limitations would run from the time of the appoinment of a receiver to the institution of the suit in question. The six-year statute was pleaded, and the court first held that no statute applied. On a rehearing, however, the court held that the six-year statute commenced to run from the time of the commission of the wrongs complained of. It yet remains that more than six years had run between the cessation of the trust and the time of the filing of the suit, and it was altogether unnecessary, therefore, for the court to go further than holding that under the fact of that case the six-year statute applied. It will be observed furthermore that the Chief Justice filed a dissenting opinion. We reiterate our statement that whether or not directors are express trustees does not so much concern the court in the instant case, and much of the learning of the opinions along this line have no application to the particular case now confronting us. It is not the purpose of this opinion to hold that the statute of limitations may not be pleaded in courts of equity. It is generally held that the statute does not apply to trusts for which there is no remedy at law, trusts cognizable alone in a court of equity and in a suit directly between trustee and *cestui que trust*.

Concede that an action at law might have been brought by the bank in this case against the directors for any portion of the losses complained of, yet no such action could have been instituted unless the officers and directors themselves had taken the initiative, and this, as a matter of fact, would have placed them in an attitude of suing themselves. When it is remembered that the losses complained of were accruing from time to time over a period of nine years, that the personnel of the board changed, two of the directors being deceased, and that an accounting is necessary, it is difficult to perceive how a jury could well dispose of all questions raised by the bill, and how the remedy at law was full, adequate, and complete. At any rate the receiver has acted promptly after his appointment, and under the circumstances this action could not have been instituted earlier. All parties in interest are now before the court. Even applying the three-year statute of limitations from the time of the death of Mr. Ventress and Mr. Jones, the action has been instituted in seasonable time.

The application for this additional opinion being now disposed of, let the case be affirmed and remanded, to be proceeded with in accordance with the opinion heretofore delivered and the additional views herein expressed.

*Affirmed and remanded.*