870 F.Supp. 962 (1994)
RESOLUTION TRUST CORPORATION, Plaintiff,
v.
Kenneth R. FIALA, et al., Defendants.
No. 4:93CV2613 JCH.
United States District Court, E.D. Missouri, Eastern Division.
October 12, 1994.
*963 *964 Dorothy L. White-Coleman, Peoples and Hale, St. Louis, MO, LaVern A. Pritchard, Hill Lewis, Minneapolis, MN, Richard C. Sanders, Elizabeth Jolliffe Basten, Hill Lewis, Detroit, MI, for plaintiff Resolution Trust Corp.
Barry A. Short, John E. Hall, Lewis and Rice, St. Louis, MO, for defendants Kenneth R. Fiala, Ralph Hunsch, J.W. Peterson, Merita M. Rocklage, Personal Rep. of Estate of Walter F. Rocklage, Harold M. Smith, George W. Trafton.
Burton H. Shostak, Moline and Shostak, St. Louis, MO, for defendants John R. Aselage, Theodore J. Hurtgen, Jr.
Louis S. Czech, Herbert K. Hoffman, Clayton, MO, for defendant Marian Hall Brewster, Ex'r of Estate of Charles G. Brewster.
Jack B. Spooner, Wittner and Poger, St. Louis, MO, for defendant Harold L. Dielman.
Barry A. Short, Lewis and Rice, St. Louis, MO, for defendant Lee W. Geiser.
Jeffery T. Demerath, Greensfelder and Hemker, St. Louis, MO, for defendant Robert A. Ortmann.
*965 Marvin E. Wright, Knight and Ford, Columbia, MO, for defendant Jackson A. Wright.
Henry D. Menghini, Sr., Kurt E. Wolfgram, Evans and Dixon, St. Louis, MO, Burton H. Shostak, Moline and Shostak, St. Louis, MO, for defendant Lution B. Hill.

MEMORANDUM AND ORDER
HAMILTON, District Judge.
This matter is before the Court pursuant to five separate Motions to Dismiss, the Motion of Defendant Wright to Strike and/or for More Definite Statement, the Motion of Defendant Dielman to Strike Count III of Plaintiff's Complaint, and the Motions of Plaintiff for Defendants Ad Litem.

I. BACKGROUND
Plaintiff, the Resolution Trust Corporation (hereinafter "RTC") brings this cause of action in its corporate capacity. Defendants are former officers and directors of Community Federal Savings and Loan Association, St. Louis, Missouri (hereinafter "Community"). Prior to December of 1990, Community was a federally chartered mutual savings and loan association. On or about December 13, 1990, the Office of Thrift Supervision (OTS), determined that Community was unfit to transact business and that Community's Board had consented to the appointment of a receiver. OTS appointed RTC receiver of Community for purposes of liquidating Community pursuant to Section 5(d)(2) of the Home Owners' Loan Act of 1933 and Section 11(c)(6)(B) of the Federal Deposit Insurance Act. On December 14, 1990, RTC took possession of Community and, as receiver, succeeded to all of the assets, rights, titles, powers, and privileges of Community as well as the rights of its shareholders, members, account holders, depositors, directors, and officers.[1]
On that same day, RTC, as receiver, entered into a purchase and assumption agreement with Boatmen's Interim Savings Bank (Boatmen's) whereby Boatmen's acquired certain assets and liabilities of Community, however, RTC retained other assets, including the instant causes of action. Then, by a contract of sale dated December 14, 1990 between RTC as receiver of Community and RTC in its corporate capacity, RTC as receiver assigned the instant causes of action to RTC in its corporate capacity. Therefore, the real party in interest with respect to the instant causes of action is RTC in its corporate capacity.
In the instant action, Plaintiff alleges that Defendants engaged in high-risk real estate venture development projects, investments, and related loans resulting in losses to Community of more than $100 million. In summary, Plaintiff makes the following factual allegations: (1) Defendants engaged in speculation with depositor funds; (2) Defendants failed to heed safe and sound banking principles requiring careful underwriting and scrutiny of proposed projects; (3) Defendants failed to secure and sufficiently analyze information and documentation prudent directors and officers should have required to assure depositors' funds would not be placed at high risk of being squandered; and (4) Defendants failed to conduct the affairs of Community and the wholly-owned subsidiaries of Community they utilized to pursue these projects as prudent fiduciaries. On the basis of these allegations, Plaintiff seeks damages for breach of fiduciary duty, negligence and gross negligence.

II. MOTIONS TO DISMISS
Defendants have filed five separate motions to dismiss: (1) the Motion to Dismiss filed by Defendants Aselage and Hurtgen on January 10, 1994; (2) the Motion to Dismiss filed by Defendant Wright on February 11, 1994; (3) the Motion to Dismiss filed by Defendants Geiser, Trafton, Fiala, Smith, Peterson, *966 Hunsch, and Rocklage (hereinafter "Geiser, et al.") on February 14, 1994; (4) the Motion to Dismiss filed by Defendant Dielman on February 14, 1994; and (5) the Motion to Dismiss filed by Defendant Hill on February 16, 1994. Defendant Brewster adopted the Motions to Dismiss filed by Defendants Dielman, Geiser, et al., and Wright on February 23, 1994. Because all of the pending motions to dismiss raise similar issues, the Court will address the motions collectively.
A cause of action should not be dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) unless, from the face of the complaint, it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957); Jackson Sawmill Co. v. United States, 580 F.2d 302, 306 (8th Cir.1978), cert. denied, 439 U.S. 1070, 99 S.Ct. 839, 59 L.Ed.2d 35 (1979). In ruling on a motion to dismiss the Court views the allegations in the complaint in the light most favorable to the non-moving party. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

A. Preemption: State Law and Federal Common Law
Defendants contend that § 212(k) of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA), Pub.L. No. 101-73, 103 Stat. 183 (1989), 12 U.S.C. § 1821(k), creates a uniform national standard of director and officer liability which preempts all causes of action based on state law and federal common law. Section 212(k) provides:
(k) Liability of directors and officers.

A director or officer of an insured depository institution may be held personally liable for monetary damages in any civil action by, on behalf of, or at the request or direction of the Corporation, which action is prosecuted wholly or partially for the benefit of the Corporation
(1) acting as conservator or receiver of such institution, ...

for gross negligence, including any similar conduct or conduct that demonstrates a greater disregard of a duty of care (than gross negligence) including intentional tortious conduct, as such terms are defined and determined under applicable State law. Nothing in this paragraph shall impair or affect any right of the Corporation under other applicable law.

12 U.S.C. § 1821(k) (emphasis added).[2]
Defendants maintain that this section establishes a national standard of director and officer liability and thereby preempts Plaintiff's claims based on federal common law and state law. Plaintiff counters that § 1821(k) only preempts state law to the extent that state law purports to insulate directors and officers from liability for gross negligence and other more culpable conduct. Under Plaintiff's construction of the statute, its final phrase ensures that the RTC retains all rights under any other applicable law, including state law and federal common law that establishes director and officer liability for mere negligence or breach of fiduciary duty.
To date, the Eighth Circuit Court of Appeals has not had occasion to interpret § 1821(k). However, the Fifth, Seventh, Ninth, and Tenth circuits have addressed the issue of whether § 1821(k) preempts state law and federal common law claims.[3]See RTC v. Miramon, 22 F.3d 1357 (5th Cir. 1994); RTC v. Gallagher, 10 F.3d 416 (7th *967 Cir.1993); FDIC v. McSweeney, 976 F.2d 532 (9th Cir.1992) cert. denied, ___ U.S. ___, 113 S.Ct. 2440, 124 L.Ed.2d 658 (1993); FDIC v. Canfield, 967 F.2d 443 (10th Cir.1992) cert. dismissed ___ U.S. ___, 113 S.Ct. 516, 121 L.Ed.2d 527 (1992). The Ninth and Tenth circuits held that § 1821(k) does not preempt all state law causes of action. However, the Fifth and Seventh Circuits held that § 1821(k) preempts federal common law and establishes a gross negligence standard of liability for officers and directors of failed federally chartered financial institutions. Miramon, 22 F.3d at 1364; Gallagher, 10 F.3d at 424. The Court finds the analysis of Gallagher flawed in several respects which are pointed out later in this Order, therefore, the Court declines to follow the Seventh Circuit's holding and that of the Fifth Circuit which relied on Gallagher. Moreover, recently in RTC v. Chapman, 29 F.3d 1120 (7th Cir.1994), after articulating the difficulties that courts have in interpreting § 1821(k), Judge Posner expressed a willingness to reconsider his earlier decision in Gallagher. After consideration of the arguments of counsel, the relevant case law and the legislative history of § 1821(k), the Court holds that § 1821(k) does not preempt Plaintiff's state law or federal common law claims for breach of fiduciary duty, negligence, and gross negligence. This holding is consistent with this Court's earlier decision in RTC v. Gershman, 829 F.Supp. 1095 (E.D.Mo.1993).
In interpreting § 1821(k), the Court must first look to the plain language of the statute itself. Kaiser Aluminum & Chemical Corp. v. Bonjorno, 494 U.S. 827, 835, 110 S.Ct. 1570, 1575-76, 108 L.Ed.2d 842 (1990). In considering the plain language of a statute, the Court must keep in mind its historical context and the policies that the statute was intended to implement. Chapman v. Houston Welfare Rights Organization, 441 U.S. 600, 608, 99 S.Ct. 1905, 1911, 60 L.Ed.2d 508 (1979).
Section 1821(k) provides that "a director or officer of an insured depository institution may be held personally liable ... for gross negligence...." (emphasis added). Several Courts, including this court, have held that the word "may" in the first sentence of § 1821(k) is permissive, as opposed to limiting. FDIC v. Canfield, 967 F.2d 443, 446 (10th Cir.1992); FDIC v. McSweeney, 976 F.2d at 537 (citing Rose v. Rose, 481 U.S. 619, 626-27, 107 S.Ct. 2029, 2034, 95 L.Ed.2d 599 (1987), for the proposition that the use of the word "may" does not imply exclusivity or preemption of state law); RTC v. Gershman, 829 F.Supp. at 1100; cf, RTC v. Gallagher, 10 F.3d 416 (7th Cir.1993). The Court follows this authority, including its earlier decision in Gershman, in holding that § 1821(k) does not preempt state law negligence claims or federal common law claims. Rather, § 1821(k) only preempts state laws purporting to limit the liability of directors and officers of failed financial institutions to conduct rising to the level of gross negligence or more culpable conduct.
The Court cannot limit its analysis to the first sentence of § 1821(k). Rather the Court must consider the statute as a whole keeping in mind the principle of statutory construction that a statute must be construed to give meaning to all of its provisions. United States v. Menasche, 348 U.S. 528, 538, 75 S.Ct. 513, 519-20, 99 L.Ed. 615 (1955).
Interpreting § 1821(k) as preempting all other applicable law would render that section meaningless contrary to the rules of statutory construction. The last sentence of § 1821(k) provides that the section is not intended to "impair or affect any right of the Corporation under other applicable law." When enacting contrary legislation, Congress is presumed to be aware of the existing law. Cannon v. University of Chicago, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). On the basis of that principle, the Court finds that the phrase "other applicable law" as used in § 1821(k) refers to other applicable state and federal law, therefore, RTC has the ability to sue under state and federal common law causes of action. See McSweeney, 976 F.2d at 538; Canfield, 967 F.2d at 446-47; RTC v. Gibson, 829 F.Supp. 1110, 1117-1118 (W.D.Mo.1993).
Furthermore, the Court finds that the legislative history of the statute supports the interpretation that § 1821(k) only preempts *968 state law to the extent it insulates directors and officers from liability for gross negligence and other more culpable conduct. Section 1821(k) originated in the Senate as § 214(n)(1) of S.774. Initially, the section included a broad statement preempting state law actions for monetary damages against directors and officers of insured financial institutions. Specifically, § 214(n)(1) provided:
(1) Liability  Notwithstanding any provision of state law, a director or officer of an insured financial institution may be held personally liable for monetary damages in any civil action by, on behalf of, or at the request or direction of the Corporation ...
for any cause of action available at common law, including, but not limited to, negligence, gross negligence, willful misconduct, breach of fiduciary duty, breach of contract, conversion, fraud, waste of corporate asset; and violation of statutes.
S.774, 101st Cong., 1st Sess. § 214(n)(1) (April 13, 1989). Several days later, Senator Riegle, the Senate floor manager of the bill, sponsored a manager's amendment providing that:
A director or officer ... may be held personally liable for gross negligence or intentional tortious conduct, as those terms are defined and determined under applicable State law. Nothing in this paragraph shall impair or affect any right, if any, of the Corporation that may have existed immediately prior to the enactment of the FIRREA Act.
S.775, 101st Cong., 1st Sess. § 214(n)(1), 135 Cong.Rec. S4304, S4318 (daily ed. April 19, 1989). This amendment passed the Senate on April 19, 1989.
The House passed its version of FIRREA, H.1278, on June 15, 1989. The House version did not contain a provision similar to § 214(n)(1) of the Senate bill. FIRREA was sent to joint conference committee where section 214(n)(1) of the Senate version became § 212(k) of the House version. The final paragraph was revised to provide that an officer or director may be held personally liable
for gross negligence, including any similar conduct or conduct that demonstrates a greater disregard of a duty of care (than gross negligence) including intentional tortious conduct, as such terms are defined and determined under applicable State law. Nothing in this paragraph shall impair or affect any right of the Corporation under other applicable law.
H. 1278, 101st Cong., 1st Sess., § 212(k), reprinted in the 1989 U.S.Code Cong. & Admin.News, 103 Stat. 243.
The Senate Report indicates that Congress intended to prevent State limitations on the remedies available to the RTC. The Senate Report explains that:
New subsection [214](n) enables FDIC to pursue claims against directors or officers of insured financial institutions for gross negligence (or negligent conduct that demonstrates a greater disregard of a duty of care than gross negligence) or for intentional tortious conduct. This right supersedes State law limitations that, if applicable, would bar or impede such claims. This subsection does not prevent FDIC from pursuing claims under State law or under other applicable Federal law, if such law permits the officers or directors of a financial institution to be sued (1) for violating a lower standard of care, such as simple negligence, or (2) on an alternative theory such as breach of contract or breach of fiduciary duty.
135 Cong.Rec. S6912 (daily ed. June 19, 1989).[4]
The House Conference Committee Report on FIRREA only addressed the preemption aspect of § 1821(k), not the savings clause:
Title II preempts State law with respect to claims brought by the FDIC in any capacity [sic] against officers or directors of an insured depository institution. The preemption allows the FDIC to pursue claims for gross negligence or any conduct that demonstrates a greater disregard of a duty of care, including intentional tortious conduct. *969 H.R.Conf.Rep. No. 222, 101st Cong. 1st Sess. 398 (1989), reprinted in, U.S.Code Cong. & Admin.News 1989 at pp. 432, 437.[5] The House version of FIRREA did not contain a provision similar to § 1821(k), and the Conference Report does not discuss the meaning of the savings clause. Therefore, the Senate Report is the only statement concerning the savings clause added to the preemptive language of § 1821(k). Thus, the Senate Report must be given substantial weight. The Eighth Circuit's decision in Arkansas State Bank Commissioner v. RTC, 911 F.2d 161 (8th Cir.1990), supports this proposition. In interpreting a different provision of FIRREA, the court gave no weight to the House-Senate Conference Report of FIRREA because it did not address the provision at issue in the case. Id. at 172 n. 11. Rather, the court found that because § 1823(k) originated in the Senate, the Senate report on FIRREA had "particular relevance." Id.

Defendants argue that Plaintiff can only assert federal, as opposed to state, claims because Community was a federally chartered institution. The Court finds the state/federal distinction impliedly drawn in Gallagher nonsensical. See RTC v. Camhi, 1994 WL 591600, 1994 U.S. Dist LEXIS 8679 (D.C.Conn., April 6, 1994); RTC v. Gibson, 829 F.Supp. 1103, 1109 n. 2 (W.D.Mo.1993) (stating that nothing indicates that federally chartered institutions are only subject to federal causes of action). Section 1821(k) draws no distinction between state and federally chartered institutions. In addition, § 1821(k) expressly permits the application of state law. Moreover, a result that depends on the state or federal nature of an institution's charter undermines the goal of uniform liability standards that defendants assert is the purpose of § 1821(k). In the instant case, Community was federally chartered. However, applying state law to a federally chartered bank is supported by several decisions.[6]
After reviewing the legislative history and the plain language of the statue, the Court finds that by enacting § 1821(k), Congress intended to enhance the ability of RTC to pursue recoveries against directors and officer of failed financial institutions. Congress only intended § 1821(k) to preempt state law to that extent that it "exonerates directors and officers for liability for gross negligence." Gershman, 829 F.Supp. at 1100. Having determined that § 1821(k) neither preempts state law causes of action nor federal common law, the Court must determine whether Plaintiff has stated claims for which relief can be granted.

B. Gross Negligence
In Count III of its Complaint, Plaintiff purports to state a cause of action against named Defendants for gross negligence. Defendants argue that Plaintiff fails to state a cause of action for gross negligence because Plaintiff bases its claim for gross negligence on the same actions that allegedly constitute ordinary negligence or breach of fiduciary duty. Defendants' argument is not persuasive because Federal Rule of Civil Procedure 8(e)(2) allows a party to set forth alternative claims, either in one count or in separate counts. Moreover, it is well established that a plaintiff may plead multiple legal theories based on similar factual allegations. U.S. v. Cohn, 682 F.Supp. 209 (S.D.N.Y.1988).
Defendants also argue that RTC fails to state a claim for gross negligence because Plaintiff has failed to allege intentional misconduct on the part of Defendants.
Section 1821(k) provides that directors may be sued for gross negligence. However, *970 the statute defers to the state-law definition of the term:
A director or officer ... may be held personally liable ... for gross negligence, including any similar conduct or conduct that demonstrates a greater disregard of a duty of care (than gross negligence) including intentional tortious conduct, as such terms are defined and determined under applicable State law.
12 U.S.C. § 1821(k). By incorporating state law definitions of gross negligence, the statute essentially defers to governing state law.
Missouri courts, however, "do not recognize degrees of negligence and therefore do not distinguish between negligence and gross negligence." Gershman, 829 F.Supp. at 1101 (quoting Duncan v. Missouri Board for Architects, Professional Engineers & Land Surveyors, 744 S.W.2d 524, 532 (Mo.App. 1988)). See also Fowler v. Park Corp., 673 S.W.2d 749, 755 (Mo. banc 1984); Warner v. Southwestern Bell Telephone Co., 428 S.W.2d 596, 603 (Mo.1968). No Missouri cases discuss the type of wrongful conduct that must be alleged to state a cause of action against a director under a gross negligence standard.
Relying on Delaware law, Defendants argue that the Missouri business judgment rule requires the Court to define gross negligence as intentional misconduct, such as fraud, bad faith, or self dealing. Aronson v. Lewis, 473 A.2d 805, 817 (Del.1984). As stated above, FIRREA relies on state law to define gross negligence. Because "the governing state law does not create a cause of action for gross negligence or set forth an applicable definition, the RTC may not assert a gross negligence claim." Gershman, 829 F.Supp. at 1101. Therefore, Plaintiff is precluded from asserting claims for gross negligence and the Court will dismiss such claims as set forth in Count III of Plaintiff's Complaint.

C. Breach of Fiduciary Duty
In Count I of its Complaint, Plaintiff alleges that all Defendants breached their fiduciary duties. Defendants contend that even if FIRREA does not preempt Plaintiff's state law breach of fiduciary duty claim, that claim should be dismissed because Plaintiff has failed to allege facts that would support a finding that Defendants breached their duty of loyalty.
Defendants rely on Forinash v. Daugherty, 697 S.W.2d 294 (Mo.App.1985), for the proposition that an action for breach of fiduciary duty is one for damages arising from an officer's or director's abuse of his position for personal gain. Defendants then argue that Plaintiff fails to state a claim for breach of fiduciary duty because Plaintiff did not allege that Defendants abused their positions for personal gain. In Forinash, the court identified six methods by which officers and directors breach their fiduciary duty. Id. at 301-02. However, Missouri courts have not classified all of the fiduciary duties of corporate officers and directors. Forinash v. Daugherty, 697 S.W.2d 294, 302 (Mo.App. 1985). In RTC v. Gibson, 829 F.Supp. 1103, 1109-1110 (W.D.Mo.1993), the court stated that Missouri law does not limit the concept of fiduciary duty to self-dealing. Similarly, this court in Gershman, relied on Gibson in holding that the RTC's breach of fiduciary duty claim stated a cause of action for which relief could be granted. 829 F.Supp. at 1102. In the instant case, after reviewing the Complaint, the Court finds that RTC's allegations in Count I are sufficient to state a claim for breach of fiduciary duty.

D. Ordinary Negligence
Defendants contends that Plaintiff fails to state a claim for ordinary negligence because Plaintiff has not plead sufficient facts. In Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957), the Supreme Court stated the general rule of pleading under the Federal Rules of Civil Procedure. In Conley, the Court indicated that the plaintiff is not required to articulate specific facts in support of its general allegations. Id. Furthermore, it is well established that pleadings are to be construed liberally in favor of the pleading party. Beacon Theatres, Inc., v. Westover, 359 U.S. 500, 506, 79 S.Ct. 948, 955, 3 L.Ed.2d 988 (1959). The Federal Rules of Civil Procedure only require a short plain statement sufficient to give defendant fair notice of the charges against him. See Shelter Mutual Ins. Co. v. Public Water Supply Dist. No. 7 of Jefferson *971 County, Mo., 747 F.2d 1195 (8th Cir.1984); Ogala Sioux Tribe of Indians v. Andrews, 603 F.2d 707, 714 (8th Cir.1979). Relying on this principle, the Court finds that Plaintiff's Complaint sufficiently alleges the elements of negligence to put Defendants on notice.
Defendants also argue that Plaintiff's claim for ordinary negligence should be dismissed because it is precluded by the business judgment rule. Defendants rely on RTC v. Gibson, 829 F.Supp. 1103 (W.D.Mo. 1993) for this proposition. However, in Gibson, the court applied the business judgment rule only after the defendants filed a motion for summary judgment. Id. In Gibson, the court denied defendant's motion to dismiss RTC's negligence claim finding that RTC's complaint alleged conduct that, if proved at trial, would show that defendants did not act in good faith in carrying out their responsibilities. Id. at 1110.
Similarly, the court in RTC v. Heiserman, 839 F.Supp. 1457 (D.Colo.1993), refused to dismiss RTC's claims on the basis of the business judgment rule on grounds that the business judgment rule is a fact-bound affirmative defense that does not provide a basis for dismissal under Rule 12(b)(6). Similarly, the court in FSLIC v. Musacchio, 695 F.Supp. 1053 (N.D.Cal.1988) denied a motion to dismiss on grounds that "a ruling on the applicability of the business judgment rule is peculiarly a question of fact, wholly inappropriate for consideration on a motion to dismiss." Based on the foregoing, the Court finds that Defendants motion to dismiss Plaintiff's ordinary negligence claim should be denied. The Court cannot say that Plaintiff can prove no set of facts supporting its claim for relief based on ordinary negligence.

III. LIMITATIONS PERIOD
Defendants assert that Plaintiff's claims are time-barred because Plaintiff failed to file suit within the three year period pursuant to § 1821(d)(14). A complaint does not state a claim for which relief can be granted if it states a claim for which the statute of limitations period has expired. RTC v. O'Bear, Overholser, Smith & Huffer, 840 F.Supp. 1270, 1280 (N.D.Ind.1993). The FIRREA statute of limitations provides:
(A) In general
Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the Corporation shall be
* * * * * *
(ii) in the case of any tort claim, the longer of
(I) the 3-year period beginning on the date the claim accrues; or
(II) the period applicable under State law.
(B) Determination of the date on which a claim accrues
For purposes of subparagraph (A), the date on which the statute of limitations begins to run shall be the later of
(i) the date of the appointment of the Corporation as conservator or receiver; or
(ii) the date on which the cause of action accrues.
12 U.S.C. § 1821(d)(14). Plaintiff and Defendants agree that the FIRREA statute of limitations does not revive stale state law claims. FDIC v. Dawson, 4 F.3d 1303 (5th Cir.1993). Determining whether Plaintiff's claims are time barred involves a two-part analysis. First, the Court must determine whether Plaintiff's claims were viable under state law on December 13, 1990, the date Plaintiff was appointed receiver. Next, if the claims were viable, the Court must apply the FIRREA statute of limitations to determine if Plaintiff's claims were timely filed. See RTC v. Kerr, 804 F.Supp. 1091, 1093 (W.D.Ark.1992).

A. Viability of Claims
Plaintiff argues that by virtue of the adverse domination doctrine, its claims were not barred on the date that Plaintiff took over as receiver of Community. Defendants counter that Missouri does not recognize the adverse domination theory and therefore, Plaintiff's claims were time-barred. After consideration of counsels' arguments and the relevant case law, the Court holds that Missouri courts would recognize adverse domination and therefore, Plaintiff's claims were not time-barred under Missouri law on the date *972 Plaintiff was appointed receiver of Community.
The adverse domination theory represents the modern approach to determining when a cause of action against a bank's officers and directors accrues. FDIC v. Hudson, 673 F.Supp. 1039, 1042 (D.Kan.1987). Under this approach, the statute of limitations is tolled so long as a bank remains under the control of the same wrongdoers against whom a cause of action exists. Id. The rationale underlying the adverse domination theory is that the wrongdoers cannot be expected to initiate a cause of action against themselves. Id. Only when a new entity takes control of the bank, whether its a new board of directors or a receiver, can suit be brought as a practical matter. Under the theory of adverse domination, the statute of limitations on claims against the officers and directors of a financial institution is tolled until they relinquish control of the institution. Adverse domination is presumed when the allegedly culpable directors constitute a majority of the board of directors. FDIC v. Howse, 736 F.Supp. 1437, 1441 (S.D.Tex.1990).
In addition, "the limitations statute does not begin to run against a director who resigns if the remaining culpable directors and officers retain control after the officer's resignation." FSLIC v. Williams, 599 F.Supp. 1184, 1193 (D.Md.1984). See also, RTC v. Scallety, 810 F.Supp. 1505, 1513 (D.Kan. 1992); FDIC v. Bird, 516 F.Supp. 647, 652 (D.P.R.1981).
In the instant case, the directors comprised the majority of the board from 1978 until the RTC assumed control of Community as receiver in 1990. Paragraph 89 of Plaintiff's Complaint alleges that Community was under the control of the directors and officers who are identified collectively in paragraph 35 of the Complaint. Plaintiff also alleges that because of the control exercised by the directors and officers, Community was unable to bring suit for the claims asserted in Plaintiff's complaint.
As an initial matter, the Court must determine whether federal or state law governs tolling. However, there is a divergence of opinion as to whether federal or state law governs the tolling of professional responsibility suits brought by FDIC or RTC.
Recent decisions of other District Courts support the application of the adverse domination theory in the instant case. The District Court of Puerto Rico was first in recognizing the adverse domination theory. In FDIC v. Bird, 516 F.Supp. 647 (D.P.R.1981), the court "recognized the realities of shareholders' position that, without knowledge of wrongful activities committed by directors, shareholders have no meaningful opportunity to bring suit." Id. at 651. The court explained that it defies logic to assume that those in control would initiate a cause of action against themselves, or to assume that despite directors' control of the institution, the stockholders would have sufficient information regarding the wrongful conduct to bring suit themselves. Control of the institution implies control of the information. Id.
Numerous District Courts have followed Bird in recognizing that the realities of corporate operation in the today's society create a need for tolling the limitations period under the theory of adverse domination.[7] However, as mentioned above, the circuits are split regarding whether federal or state law governs the tolling of causes of action brought by the FDIC or the RTC. See FDIC v. Cocke, 7 F.3d 396 (4th Cir.1993), cert. denied, ___ U.S. ___, 115 S.Ct. 53, 130 L.Ed.2d 12 (1994) (stating that state law governs whether adverse domination tolls the state statute of limitations under FIRREA); FDIC v. Dawson, 4 F.3d 1303 (5th Cir.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 2673, 129 L.Ed.2d 809 (1994) (stating that state law tolling principles govern the application of adverse domination). But see Farmers & Merchants National Bank v. Bryan, 902 F.2d 1520, 1523 (10th Cir.1990) (adopting adverse domination as part of the federal common law); and FDIC v. Bird, 516 F.Supp. 647, 649-51 (D.P.R.1981) (recognizing adverse *973 domination as part of federal common law). After reviewing the relevant case law, the Court follows the authority providing that state law principles govern whether adverse domination tolls the statute of limitations in the instant case. The Court rejects the reasoning of the Farmers' Court for the reasons cited in FDIC v. Dawson, 4 F.3d 1303, 1309 (5th Cir.1993) (noting that the Supreme Court has held that when state statute of limitations are borrowed, state tolling principles are the primary guide for the federal court) (citing Johnson v. Railway Express Agency Inc., 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975)). State tolling principles are only disregarded if they are inconsistent with federal policy. Id.
After determining that Missouri law governs the tolling of the statute of limitations, the Court must decide whether Missouri courts would recognize adverse domination to toll the statute of limitations prior to the appointment of RTC as receiver.
To date, Missouri courts have neither accepted nor rejected the theory of adverse domination. Therefore, the Court must select the rule it believes the state court is likely to adopt in the future. C. Wright, Law of Federal Courts § 58, at 396-397 (5th ed.1994). "In vicariously creating law for a state, the federal court may look to such sources as Restatements of Law, treatises, and law review commentary, and the `majority rule.'" Id. Numerous other District Courts faced with the determination of whether state courts would recognize adverse domination have concluded in the affirmative. The Court is guided by this authority in holding that Missouri courts would recognize the adverse domination theory. The Court also looks to the law of several other states whose courts have tolled the running of the limitations periods on "adverse domination" type principles, particularly where, as in the instant case, defendants owed a fiduciary duty to the plaintiff, and fraudulent concealment did not need to be established. See Kurtz v. Trepp, 375 N.W.2d 280 (Iowa App.1985); Dotlich v. Dotlich, 475 N.E.2d 331 (Ind.App.1985); Auer v. Williams Meyer Co., 322 Ill.App. 244, 54 N.E.2d 394 (Ill.App. 1944).[8] The Court finds the law of these other jurisdictions to be relevant in light of the fact that Missouri has not spoken on the issue of adverse domination and "majority rule" can be one factor in determining how state courts would rule.
Turning to the District Court decisions predicting state law, in FDIC v. Hudson, 673 F.Supp. 1039, 1043 (D.Kan.1987), the court held that Kansas courts would recognize adverse domination. In so holding, the court stated that the modern adverse domination approach is consistent with Kansas' recognition of the realities of corporate control by directors. Id. at 1043.
Similarly, the Court in RTC v. Hecht, 818 F.Supp. 894 (D.Md.1992) held that Maryland courts would recognize adverse domination which strikes the proper balance between the rigidity inherent in statute of limitations and the practical realities of boards of directors dominated by a majority of culpable defendants. Id. at 898. See also RTC v. Kerr, 804 F.Supp. 1091 (W.D.Ark.1992); FDIC v. Carlson, 698 F.Supp. 178 (D.Minn.1988) (finding the rationale of adverse domination cases persuasive although Minnesota had neither rejected nor accepted the theory); FSLIC v. Williams, 599 F.Supp. 1184, 1193-95 (D.Md. 1984) (adopting adverse dominations as consistent with the state discovery rule); but see RTC v. Acton, 844 F.Supp. 307 (N.D.Tex. 1994) (holding that Texas law requires active participation in wrongdoing or fraud for adverse domination to apply and finding that gross negligence does not amount to active participation in a wrong); FDIC v. Cocke, 7 F.3d 396 (4th Cir.1993) (requiring a showing that directors concealed wrong before applying adverse domination); FDIC v. Dawson, 4 F.3d 1303 (5th Cir.1992) (finding that mere negligence is not sufficient to apply the adverse domination theory to toll the statute of limitations).
*974 Missouri has neither accepted nor rejected adverse domination. However, Missouri courts recognize similar principles of tolling. For example, in Missouri a minor's cause of action does not accrue until the minor reaches the age of majority. Mo.Rev.Stat. § 516.170. See Strahler v. St. Luke's Hospital, 706 S.W.2d 7, 11 (Mo. banc 1986) (recognizing the difficulty surrounding a minor's ability to vindicate his legal rights on his own initiative). Section 516.170 also tolls the statute of limitations where an individual is mentally incapacitated when his cause of action accrues. In the same vein, Missouri courts recognize the effects of duress and undue influence and void transactions where a person is unable to exercise free will in the matter. See McIntosh v. Dowdy, 625 S.W.2d 162 (Mo.App.1981). Based on these principles, where a suit arises in the context of control by wrongdoers of the entity that would have initiated the action, but could not, it is the same as if the entity is suffering from an incapacity. Therefore, Missouri equitable tolling principles apply to a case where, such as in the instant case, culpable directors had control of the corporation and the information necessary to initiate a cause of action.
In addition, although Missouri courts generally require that a defendant affirmatively conceals a cause of action to toll the statute of limitations, active concealment is not necessary where the defendant has a fiduciary relationship with the plaintiff. See Hasenyager v. Bd. of Police Commissioners of Kansas City, 606 S.W.2d 468, 472 (Mo. App.1980); Brink v. Kansas City, 221 S.W.2d 490, 493 (Mo.1949); Womack v. Callaway County, 159 S.W.2d 630 (Mo.1942).
Defendants argue that the examples of Missouri statutes that provide for tolling do not support the adoption of adverse domination because the such tolling statutes represent special legislative exceptions. The Court is not persuaded by this argument because Missouri courts provide for tolling the statute of limitations in situations involving fraud. In addition, where the legislature has already acted to create a special situation where tolling applies, the courts need not do so. However, that is not to say that the courts would not have recognized such an application of tolling at some point in the future. Based on the foregoing principles found in Missouri law and other jurisdictions, the Court finds that Missouri would recognize adverse domination.
In the instant case, Plaintiff seeks to recover millions of dollars from Defendants for their alleged failure to exercise due care. Defendants, the directors and officers, owed a fiduciary duty to Community. However, it would be unreasonable to have expected these Defendants to have either sued the corporation or released information to prompt the shareholders to sue the corporation while the culpable directors remained in control. Paragraph 88 of Plaintiff's Complaint alleges that Defendants at no time acknowledged or publicized their breaches of duty or attempted to secure recovery from culpable parties for the losses sustained on loans. Doing so would have involved implicating themselves. The facts of this case are consistent with the rationale underlying the adverse domination theory and are sufficient to toll the statute of limitations until the RTC was appointed receiver of Community.
Relying on FDIC v. Dawson, 4 F.3d 1303 (5th Cir.1993) and RTC v. Acton, 844 F.Supp. 307 (N.D.Tex.1994), Defendants assert that even if Missouri would recognize adverse domination, it would limit the application of this theory to cases of fraud or purposeful wrongdoing. The Court is not convinced by this argument. In deciding that Missouri would adopt adverse domination, the Court looked to the decisions of other District Courts that have predicated that the state in which the District Court sat would recognize adverse domination. In such cases, the courts recognized adverse domination even in cases where the Plaintiff did not allege fraud or purposeful wrongdoing. The Court finds that it is consistent with the rationale of the adverse domination theory to apply that theory in cases involving breach of fiduciary duty, negligence, or gross negligence. The doctrine tolls the statute of limitations because the control of the board by culpable actors precludes the initiation of a suit either because of lack of information on the part of innocent actors, or unwillingness *975 on the part of the culpable directors to sue themselves. This rationale applies even if the board's conduct does not rise to the level of fraud or purposeful misconduct. See RTC v. Hecht, 818 F.Supp. 894, 896 (D.Md. 1992) (applying adverse domination where plaintiff alleged breach of fiduciary duty, negligence, gross negligence and breach of contract and noting that RTC did not allege self-dealing or fraudulent conduct); FDIC v. Carlson, 698 F.Supp. 178 (D.Minn.1988) (applying adverse domination where plaintiff alleged negligence on the part of former officers and directors); and FDIC v. Hudson, 673 F.Supp. 1039, 1040 (D.Kan.1987) (applying adverse domination in case where plaintiff alleged breach of fiduciary duty, negligence, violation of state loan limitations, and gross negligence in loan policies and practices).

B. Timely Filing Under FIRREA § 1821(d)(14)
The Court finds that because Plaintiff's claims were viable when RTC was appointed receiver of Community, 12 U.S.C. § 1821(d)(14) controls the statute of limitations in the instant case. As mentioned previously, that section provides:
(A) In general
Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the Corporation shall be 
* * * * * *
(ii) in the case of any tort claim, the longer of 
(I) the 3-year period beginning on the date the claim accrues; or
(II) the period applicable under State law.
(B) Determination of the date on which a claim accrues
For purposes of subparagraph (A), the date on which the state of limitations begins to run shall be the later of 
(i) the date of the appointment of the Corporation as conservator or receiver; or
(ii) the date on which the cause of action accrues.
12 U.S.C. § 1821(d)(14). The Court finds that pursuant to this section, Plaintiff had five years after RTC was appointed receiver within which to file tort claims against Defendants. Mo.Rev.Stat. § 516.120.
The plain language of § 1821(d)(14) provides that the statute of limitations must be considered in two steps: (1) the number of years within which the RTC can sue following accrual; and (2) the time of accrual.
The Court finds that under subparagraph (A), because the five year period of limitations provided by Mo.Rev.Stat. § 516.120, is longer than the three year period provided in subparagraph (A)(ii)(I), the five year period applies. Pursuant to subparagraph (B), the date on which the statute of limitations begins to run is the date RTC was appointed receiver, December 13, 1990. Therefore, the Court finds that the limitations began to run on December 13, 1990 and will expire on December 13, 1995. Plaintiff filed its Complaint on December 14, 1993, therefore, it was timely filed. Because the Court finds that the applicable statute of limitations is five years from the date RTC was appointed receiver, the Court need not address Defendants' contention that RTC failed to timely file under the three year period of limitations provided in subsection (A)(ii)(I).
Several opinions provide support for the interpretation that § 1821(d)(14) "restarts" the state law statute of limitations. In FDIC v. McSweeney, 976 F.2d 532, 536 (9th Cir. 1992), the court held that the statute began to run anew when the FSLIC was appointed on April 10, 1987. McSweeney involved an action against former directors and officers of a failed savings and loan, similar to the instant cause of action. The FSLIC took over the savings and loan on April 10, 1987 and filed its complaint for breach of fiduciary duty on April 5, 1991, well beyond the running of FIRREA's three year limitations period. However, the court found that FSLIC's complaint was timely filed under California's four-year statute of limitations for breach of fiduciary duty that the Court held § 1821(d)(14) borrowed.
Similarly, in RTC v. Foley, 829 F.Supp. 352 (D.N.M.1993), the court noted that *976 § 1821(d)(14) provides for a limitations period that is the longer of either three years or the period provided by the applicable state law. In Foley, the Plaintiff filed suit four years after the FSLIC had taken over the institution. However, the court found the complaint timely filed on the basis of the applicable state statute of limitations that began the run on the date the FSLIC was appointed. The court concluded that "there is no reason not to hold that the appointment of the FSLIC restarted the four-year state statute of limitations and that the claims were therefore timely filed." 829 F.Supp. at 355.
Similarly, in RTC v. Aycock, 1993 WL 534127, 1993 U.S.Dist. LEXIS 17836 (E.D.La., Dec. 14, 1993), the court found that the RTC's complaint was timely filed under § 1821(d)(14) if it was filed within the later of the state law period beginning the date the RTC was appointed or within three years after that date. See also RTC v. Gallagher, 800 F.Supp. 595 (N.D.Ill.1992), aff'd., RTC v. Gallagher, 10 F.3d 416 (7th Cir.1993) (holding that the limitations period begins to run on the date the claim accrues, and that the claim accrues the later of the date the Corporation was appointed, or when the cause of action accrued).
Based on the foregoing case law, the Court finds that pursuant to § 1821(d)(14), Plaintiff's Complaint was timely filed. Section 1821(d)(14) involves a two-step analysis. Under subsection (A), the statute of limitations is the longer of (1) the three year period beginning on the date the claim accrues; or (2) the applicable period under state law. Subparagraph (B) helps determine which of these two periods is longer. Subparagraph (B) provides that the cause of action accrue on the later of (1) the date the Corporation is appointed receiver or conservator; or (2) the date on which the cause of action accrues. In the instant case, the later of the two considerations in subsection (B) is the date of the RTC was appointed receiver. Therefore, for purposes of subsection (A), the cause of action accrued on December 13, 1990. Applying subsection (A), the applicable statute of limitations is that provided by the applicable state law, § 516.120 Mo.Rev.Stat., which is five years as opposed to the three years provided in (A)(ii)(I). Therefore, Plaintiff had five years from December 13, 1990 within which to file its cause of action.
The legislative history of § 1821(d)(14) provides further support for the Court's conclusion that this section restarts the state law statute of limitations. The legislative history of FIRREA makes it clear the goal of FIRREA is to enhance the ability of the government to proceed against the former officers and directors of failed financial institutions. In FDIC v. New Hampshire Ins. Co., 953 F.2d 478, 485 n. 2 (9th Cir.1991), the court quoted Senator Riegle, the Senate sponsor of the bill. Senator Riegle stated that
[The statute of limitations provisions] are of utmost importance. Extending these limitations periods will significantly increase the amount of money that can be recovered by the Federal Government through litigation.... the provisions should be construed to maximize the potential recoveries by the Federal Government by preserving to the greatest extent permissible by law claims that would otherwise have been lost due to the expiration of hitherto applicable limitations periods.
Id. (quoting 135 Cong.Rec. § 10205 (Daily ed. Aug. 4, 1989)). Defendants urge the Court to disregard this statement. The Court declines to do so recognizing that in analyzing legislative history, a sponsor's or manager's interpretation of his own bill should be accorded substantial weight. Federal Energy Admin. v. Algonquin SNG, Inc., 426 U.S. 548, 564 and n. 17, 96 S.Ct. 2295, 2304 and n. 17, 49 L.Ed.2d 49 (1976).
Based on the above analysis, the Court finds that Plaintiff's Complaint was timely filed under § 1821(d)(14) which provides that the applicable statute of limitations is the five-year period provided by state law that began running on the date the RTC was appointed receiver of Community. As such, the Court does not need to address whether Plaintiff timely filed its Complaint under the shorter three-year limitations period. Therefore, the Court will deny the Defendants' Motion to Dismiss based on Plaintiff's failure to timely file its Complaint.

*977 IV. MOTION TO STRIKE

Defendant Wright moves the Court to strike paragraphs 36-39, 42-44, 51-63, and 87-88 of Plaintiff's Complaint on grounds that they are redundant, immaterial, or impertinent. Federal Rule of Civil Procedure 12(f) provides that "the court may order striken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Under Rule 12(f), redundant refers to a statement of facts that are wholly foreign to the issue or that are needlessly repetitive of immaterial allegations. Burke v. Mesta Machine Co., 5 F.R.D. 134 (D.Pa.1946). Immaterial claims are claims that have no essential or important relationship to the claim for relief. Rawson v. Sears Roebuck & Co., 585 F.Supp. 1393 (D.Colo.1984). And impertinent matters consist of statements that do not pertain to the issues in question. Id.
After careful consideration of Plaintiff's allegations contained in paragraphs 36-39, 42-44, 51-63, and 87-88 and Defendant's memorandum in support of his motion to strike, the Court finds that Plaintiff's allegations are not redundant, immaterial, or impertinent. As such, the Court will deny Defendant Wright's Motion to Strike.

V. MOTION FOR MORE DEFINITE STATEMENT
Defendant Wright moves the Court to order Plaintiff to make a more definite statement of its allegations. In support of this request, Defendant Wright notes that Plaintiff's allegations in Paragraphs 40, 83, and 86 are so vague and/or ambiguous that Defendant cannot reasonably be required to frame a responsive pleading thereto.
Paragraph 40 of Plaintiff's Complaint reads as follows:
The directors and officers breached their duties and are liable for the losses caused by the breach of their duties.
Defendant asserts that this paragraph fails to specify which duties the directors and officers breached; fails to specify the manner in which each individual defendant allegedly breached the unspecified duties; and fails to specify any relevant time period with respect to the alleged breaches.
Paragraph 83 of the Complaint reads as follows:
Pursuant to their duties as directors and officers of federally chartered, federally-insured savings and loan, the directors and officers should have ensured compliance with such standards and practices and to conform with such laws and regulations throughout the period within which Community and subsidiaries were engaged in the second cycle of real estate joint ventures, investments, and related loans.
Defendant contends that this allegation is vague because it fails to specify the standards, laws and regulations referred to therein.
Paragraph 86 of Plaintiff's Complaint states:
Community was also forced to honor various outstanding letters of credit issued in conjunction with the joint ventures according to their terms.
Defendant maintains that this allegation is vague in that it does not specify which letters of credit Community was forced to honor, the dates of such occurrences, the joint ventures with which such letters were connected, and other terms of the letters of credit which Plaintiff claims caused damage to Community.
Federal Rule of Civil Procedure 12(e) provides that a party may move for a more definite statement if "a pleading ... is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Fed.R.Civ.P. 12(e). Rule 12(e) motions are not viewed favorably by the law. Thrasher v. Missouri State Highway Comm'n, 534 F.Supp. 103, 106 (E.D.Mo. 1981), aff'd, 691 F.2d 504 (8th Cir.1982), cert. denied 460 U.S. 1043, 103 S.Ct. 1440, 75 L.Ed.2d 797 (1983). Rule 12(e) is not designed to remedy an alleged lack of detail, rather, the Rule is intended to serve as a means to remedy unintelligible pleadings. FRA S. p. A. v. Surg-O-Flex of America, Inc., 415 F.Supp. 421, 427 (S.D.N.Y.1976).
After careful consideration of Plaintiff's allegations contained in the above-mentioned *978 paragraphs and Defendant's memorandum in support of its motion for more definite statement, the Court finds that Plaintiff's Complaint sets forth the RTC's allegations with sufficient clarity that Defendant reasonably can be expected to frame a responsive pleading. Therefore, the Court will deny Defendant Wright's Motion for More Definite Statement.

VI. DEFENDANTS AD LITEM
Plaintiff moves the Court to appoint defendants ad litem for Charles G. Brewster, deceased, and Walter F. Rocklage, deceased. Plaintiff alleges that both individuals were insured against liability for damages resulting from wrongdoing in connection with the instant cause of action.
Counsel for Merita Rocklage has no objection to the appointment of Merita Rocklage as defendant ad litem for Walter F. Rocklage. As such, the Court will grant Plaintiff's Motion to appoint Merita Rocklage defendant ad litem.
Counsel for Marion Brewster contends that a defendant ad litem can only be appointed by the Probate Court of St. Louis County. However, pursuant to Mo.Rev.Stat. § 537.021, where a deceased wrongdoer was insured against liability for damages and damages may be recovered from the decedent's liability insurer, the court in which any such cause of action is filed shall appoint upon request of the plaintiff a qualified person to be the defendant ad litem. Based on the plain language of the statute, the Court will grant Plaintiff's motions to appoint Marion Brewster as defendant ad litem for Charles G. Brewster. In so doing, the Court notes that both Marion Brewster and Merita Rocklage have been represented by counsel throughout the pendency of this cause of action and have filed or adopted dispositive motions in this cause of action.
Accordingly,
IT IS HEREBY ORDERED that the Motions to Dismiss filed by Defendants Aselage and Hurtgen [docket # 9]; Defendant Wright [docket # 33]; Defendants Geiser, et al. [docket # 35]; Defendant Dielman [Motion to Strike Count III docket # 13]; Defendant Hill [docket # 40]; and Defendant Brewster [by adoption, docket # 43] are GRANTED with respect to Plaintiff's claim of gross negligence as set forth in Count III and DENIED with respect to Plaintiff's claims of breach of fiduciary duty and negligence as set forth in Counts I and II, respectively.
IT IS FURTHER ORDERED that the Motion for to Strike and/or for More Definite Statement filed by Defendant Wright [docket # 33] is DENIED.
IT IS FURTHER ORDERED that the Plaintiffs Motions for Defendants Ad Litem [docket # 2 and 3] are GRANTED.
NOTES
[1] Plaintiff fails to state specifically the date on which RTC was appointed as receiver of Community. For purposes of considering the pending motions, the Court assumes that RTC was appointed receiver on December 13, 1990. This is consistent with the letter from OTS notifying Community that RTC was appointed receiver on December 13, 1990. (Exh attached to the Mtn. of Dfts. Geiser, et al. for Summ. Judg.; Exh. A, attached to Pltf's Memorandum in Opposition to Dft's Geiser et al.'s Mtn. for Summ. Judg.)
[2] Section 1821 of Title 12 addresses the powers and duties of the Federal Deposit Insurance Corporation as conservator and receiver. Pursuant to 12 U.S.C. § 1441a(b)(4)(A), the RTC possesses the same powers and duties as the FDIC.
[3] In Gaff v. Federal Deposit Insurance Corp., 919 F.2d 384, 390-91 (6th Cir.1990), modified on other grounds, 933 F.2d 400 (6th Cir.1991), the Sixth Circuit cited § 1821(k) for the proposition that "Congress has clearly indicated that the liability of officers and directors of a bank are determined under federal law." However, the construction of § 1821(k) was not at issue in Gaff. Therefore, the Sixth Circuit's discussion of § 1821(k) is rather cursory as compared to the in-depth analyses of the Ninth and Tenth Circuits. The Court finds that the Sixth Circuit's statement regarding § 1821(k) is not persuasive. See also McSweeney, 976 F.2d at 537 n. 4.
[4] The Gallagher court's interpretation of 1821(k)'s legislative history is flawed because the court failed to consider this remark made by Senator Riegle, the floor manager of the bill.
[5] The Gallagher court is mistaken in relying on the conference report to support the Court's holding that simple negligence and breach of fiduciary claims based on federal common law are preempted. The conference report upon which the Court relies does not discuss federal common law, the only issue before the court in Gallagher, 10 F.3d at 424.
[6] See RTC v. Eason, 17 F.3d 1126 (8th Cir.1993) (applying Arkansas law to negligence and breach of fiduciary duty claims); FDIC v. Stahl, 840 F.Supp. 124 (S.D.Fla.1993) (applying state law to a federally chartered institution); RTC v. Heiserman, 839 F.Supp. 1457 (D.Colo.1993) (applying state law to a federally chartered institution); FDIC v. Swager, 773 F.Supp. 1244 (D.Minn.1991) (applying federal law to a state chartered institution).
[7] See FDIC v. Berry, 659 F.Supp. 1475 (E.D.Tenn.1987); FDIC v. Dempster, 637 F.Supp. 362 (E.D.Tenn.1986); FDIC v. Buttram, 590 F.Supp. 251 (N.D.Ala.1984); FSLIC v. Williams, 599 F.Supp. 1184, 1193-94 (D.Md.1984).
[8] Plaintiff also cites the following cases where the courts used adverse domination principles to toll the statute of limitations during the time the culpable directors and officers were in control of the corporation. Ventress v. Wallace, 111 Miss. 357, 71 So. 636 (Miss.1916); San Leandro Canning Co. v. Perillo, 211 Cal. 482, 295 P. 1026 (Cal.1931); Reid v. Robinson, 64 Cal.App. 46, 220 P. 676 (1923); Bilby v. Morton, 119 Okla. 15, 247 P. 384 (Okla.1926).